UNITED STATES

v.

**Airman Basic Alan W. THOMPSON, Jr., FR 259–27–4383, United States Air Force.**

ACM S25365.

U. S. Air Force Court of Military Review.

2 March 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Colonel Anthony C. Vance, USAFR.

Appellate Counsel for the United States: Colonel James P. Porter and Lieutenant Colonel Bruce R. Houston.

Before POWELL, Senior Judge, and KASTL and MAHONEY, JJ.

## DECISION

MAHONEY, Judge:

Despite his pleas of not guilty, the accused stands convicted of wrongful possession of 133.5 grams of marihuana, in violation of Article 134, Uniform Code of Military Justice [hereinafter U.C.M.J.], 10 U.S.C. § 934. He was sentenced by court members to a bad conduct discharge. Due to the failure of security policemen to adhere to regulatory procedure in obtaining the accused's consent for search of his barracks room, we affirm the conviction for possession of only 3.1 grams of marihuana, and we order a sentence rehearing.

The first assigned error does not require extended discussion. The post-trial review adequately discussed the law and evidence, despite its failure to list the elements of the offense. *United States v. Dupree*, 45 C.M.R. 456 (A.F.C.M.R.1972). The elements of the offense were not in dispute at trial: the only substantial issue was the lawfulness of the two seizures of marihuana. Moreover, any objection concerning the adequacy of the review was waived by the trial defense counsel's failure to bring it to the attention of the staff judge advocate. *United States v. Goode*, 1 M.J. 3 (C.M.A.1975); *United States v. Schrock*, 11 M.J. 797 (A.F.C.M.R.1981).

The second defense claim, at trial and on this review, is that the accused was prejudiced by pretrial delay, including 165 days prior to preferral of charges. Noting that there was neither pretrial restraint, nor a demand for speedy trial, *United States v. Hounshell*, 7 U.S.C.M.A. 9, 21 C.M.R. 129 (1956), we also resolve this claim adversely to the accused. Most of the claimed prejudice merely relates to the normal inconveniences associated with being a

military member under investigation for involvement with illicit drugs. These administrative consequences do not constitute legal prejudice requiring dismissal of charges. *See, e.g., United States v. Rachels*, 6 M.J. 232 (C.M.A.1979). Concerning the remaining claim of prejudice, that a defense witness was on leave during the trial, we note that his testimony would, at best, have been cumulative to that of the accused and two other defense witnesses who testified concerning the circumstances of the accused's apprehension. Moreover, the defense failed to take any steps to request or ensure the availability of the witness' testimony at trial. Specifically, there is no indication of an effort to place the witness on administrative hold, to depose him, to obtain a continuance until his return, or to stipulate his expected testimony. In these circumstances, any prejudice to the accused was attributable solely to his own inaction.

The primary thrust of the defense case at trial and on this review is an attack upon the propriety of the two seizures of marihuana. The first, from the accused's person, occurred at about 0130 hours in the accused's barracks room at Norton Air Force Base, California. A security police officer was searching the public areas of the barracks for an intruder whom he had observed climb over the nearby perimeter fence. As the policeman walked down the hallway on the accused's floor, he passed an individual, coming from the area of the accused's room, who said: "Oh, oh, it's the cops." Proceeding further down the corridor, the policeman stopped in front of the accused's door, which was fully opened. Looking in, he saw three individuals, one of whom was holding a plastic bag, another of whom was looking at it and said: "Wow, how much do you have in there?" Despite the relatively dim red lighting in the room, and while still standing in the hallway,[1] some eight to twelve feet from the occupants, the security policeman identified the contents of the bag as a green leafy substance. Under the circumstances, he concluded that the bag contained marihuana. Thereupon, he entered the room, told the occupants to "freeze," and seized the bag of marihuana from the accused.

■ The defense witnesses, including the accused, indicated that, because of the positions of the parties and the relatively poor lighting, the security policeman could not have seen or identified the marihuana. Nonetheless, the testimony of the security policeman was clear and convincing. Like the trial judge, we are satisfied that, at the time he entered the accused's room, the police officer had ample probable cause to believe that the offense of possession of marihuana was being committed in his presence. Consequently, the apprehension of the accused and the seizure of 3.1 grams of marihuana incident to that apprehension were both lawful. *See, United States v. Sanchez*, 10 M.J. 273 (C.M.A.1981).[2]

---

1. Appellate defense counsel, quoting a portion of the security policeman's testimony, maintain that he had already entered the accused's room prior to seeing the marihuana: "As I'd entered the doorway and I was looking in, I could see the accused pulling a bag of, you know, what appeared to be a green and leafy substance, what appeared to me to be marihuana." This quotation, out of context, fails to include the security policeman's own limitation on his use of the term "doorway." When asked about his location while observing the interior of the accused's room, the police officer stated: "I was in the doorway, but standing in the hallway." We conclude, therefore, that the security policeman did not enter the accused's room until after he had seen the marihuana.

2. The Court of Military Appeals has not yet decided whether a routine barracks room arrest requires a warrant, *United States v. Escobedo*, 11 M.J. 51, 54, note 2 (C.M.A.1981), but in *United States v. Phinizy*, 12 M.J. 40 (C.M.A. 1981), it assumed the applicability of the holding of the United States Supreme Court in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). There, police officers entered the homes of two suspects, without permission, for the purpose of making two "routine" felony arrests. Here, although the accused was not afforded the opportunity to object to the warrantless intrusion into his barracks room, the officer was arresting for a felony being committed in his presence. *Id.* at 1383. We find *Payton* inapplicable in this case. Apprehension for an on-going offense is not a "routine" arrest—rather, it is an exigency requiring immediate action by the observing police officer. *See, United States v. Phinizy, supra; United States v. Acosta*, 11 M.J. 307 (C.M.

The remaining marihuana, consisting of 130.4 grams, wrapped in 16 plastic bags, was found in a cooler located in the wall locker of the accused's barracks room. The sole authority for the search of the accused's room, and the seizure of that marihuana, was a written consent given by the accused over an hour after his apprehension, while in custody at the security police building.

As pointed out by defense counsel, a heavy burden rests upon the government to establish by "clear and convincing evidence" that such in-custody consent was freely given. *United States v. Middleton*, 10 M.J. 123, 132 (C.M.A.1981). The government must prove that the consent was an act of free will, unfettered by government coercion, pressure, or restraint. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Mere acquiescence to a claim of lawful authority will not suffice. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In this case, the trial judge's findings that the consent to the search was freely and voluntarily given has support in the evidence. Nonetheless, we are somewhat concerned by the unrebutted testimony of the accused to the effect that the interviewing security policemen told him that, if he didn't consent, they would get a warrant by waking the base commander[3] (and that being needlessly awakened at that hour would no doubt displease her, to the accused's detriment). Despite our concern, we need not weigh the coercive impact of this statement,[4] because there is a more obvious defect affecting the validity of the accused's consent.

Before he signed the consent to search, the accused was advised of his right to remain silent, Article 31, U.C.M.J., 10 U.S.C. § 831, and his right to counsel.

*United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). He acknowledged those rights in writing and asserted them both. No counsel was available at that early-morning hour, so the interview was terminated. Shortly thereafter, the accused was requested to give consent for a search of his room.

It is well established, of course, that the reply to such a request is not a "statement" within the meaning of Article 31, U.C.M.J., or the Fifth Amendment. *United States v. Rushing*, 17 U.S.C.M.A. 298, 38 C.M.R. 96 (1967). Moreover, no right to counsel attaches to such a request under the U.C.M.J. or the Constitution. *United States v. Insani*, 10 U.S.C.M.A. 519, 28 C.M.R. 85 (1959). Despite these principles, however, the written "Consent for Search and Seizure" (Air Force Form 1364, Nov 74) signed by the accused contains a recapitulation of the rights to silence and counsel, followed by this preprinted language:

> In addition, I know of my absolute right to refuse to give my consent to a search. *I know that I may consult with a lawyer and have my lawyer present with me before giving consent*, if I so desire. However [sic], *I do ~~do not~~ want a lawyer.* [Emphasis added].

The stricken words were lined out by the accused, and initialed. The remaining language, as emphasized, makes it clear that the accused was advised, notwithstanding the Code or the Constitution, that he had the right to consult counsel prior to giving consent for the search of his room, and that he invoked that right.

Use of the "Consent for Search and Seizure" form (AF Form 1364) is prescribed by paragraph 9–14, Air Force Regu-

---

A.1981); *United States v. Hessler*, 7 M.J. 9 (C.M.A.1979).

**3.** We make no comment upon whether sufficient probable cause existed to authorize a warrant. *But see, United States v. Mota Aros*, 8 M.J. 121, 123 (C.M.A.1979). However, it is worth reminding law enforcement officials that a claim of authority may vitiate a consent to

search. Moreover, it cannot be gainsaid that even if the marihuana *could* have been lawfully seized independently of the accused's consent, it was not *actually* so obtained. *United States v. Peurifoy*, 22 U.S.C.M.A. 549, 48 C.M.R. 34 (1973).

**4.** *But see, United States v. Watkins*, 22 U.S.C. M.A. 270, 273, 46 C.M.R. 270, 273 (1973).

lation 125–3, Security Police Handbook, dated 1 April 1979. This implementing directive states, in regard to the AF Form 1364:

> This form is used when an individual consents to a search of his or her person or property freely and voluntarily, with the purpose of obtaining consent in writing. *Do not use any other form of written consent when this form is available.* Prepare only one copy and retain it with the case file. [Emphasis added].

Taken together then, the net effect of the consent form and the implementing regulation was to confer upon the individual a new right—the right to counsel in deciding whether or not to consent to the search of his barracks room.[5] Clearly, that right was abrogated in conducting the search prior to affording this accused the opportunity to consult counsel.[6]

Although not provided for in the cases, the Code, or the Constitution, a right created by government regulation may be invoked by a party in the protected class. As stated by the Court of Military Appeals:

> [A] government agency must abide by its own rules and regulations where the underlying purpose of such regulation is the protection of personal liberties or interests.

*United States v. Russo,* 1 M.J. 134, 135 (C.M.A.1975); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). Considering the above-quoted language of the AF Form 1364, we are compelled to conclude that affording an individual the right to counsel prior to consenting to a search was intended to protect his personal interests.[7] Accordingly, the government's violation of that right requires exclusion of the 130.4 grams of marihuana seized in the search of the accused's room.

In consonance with the foregoing, only so much of the findings are affirmed as find that the accused wrongfully possessed 3.1 grams of marihuana. In view of the great disparity between the approved findings and the affirmed findings, and with due regard for the limited options available to us in either affirming the bad conduct discharge or changing it to some lesser form(s) of punishment,[8] we find sentence reassess-

---

**5.** Based upon a similarly worded consent form, this Court has previously given tacit recognition to the existence of a right to have an attorney present before consenting to a search, and a right to consult with the attorney prior to giving consent. *United States v. Dreisewerd,* 47 C.M.R. 360, 361–62 (A.F.C.M.R.1973).

**6.** It is arguable that, under these circumstances, the accused's consent was conditioned upon first being afforded the opportunity to consult counsel, and that it was therefore ineffective at the time the search was conducted. *C.f., United States v. Castro,* 23 U.S.C.M.A. 166, 48 C.M.R. 782 (1974) (consent may be limited or withdrawn by the express declaration of the person consenting); *United States v. Cady,* 22 U.S.C.M.A. 408, 47 C.M.R. 345 (1973) (consent may be withdrawn before the search has begun or while it is in progress).

**7.** It may well be that the drafters of AFR 125–3 and AF Form 1364 were motivated solely to ensure that any written consent obtained would ultimately be held free and voluntary. As the Court of Military Appeals noted in *United States v. Insani,* 10 U.S.C.M.A. 519, 521, 28 C.M.R. 85, 87 (1959), one indicia that such a consent was free and voluntary might be that the suspect had already knowingly and voluntarily waived his rights under Article 31, U.C.

M.J. Another indicia might be that the individual was specifically advised of the right to refuse to give consent. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *United States v. Noreen,* 23 U.S.C.M.A. 212, 49 C.M.R. 1 (1974). In their attempt to have such waivers apparent in every case, however, the drafters have gone one step further and afforded the accused a new substantive right to counsel.

**8.** If, for example, we commuted the accused's sentence to a period of confinement, he would be credited for confinement served since the date the sentence was adjudged by the court-martial. Article 57(b), U.C.M.J., 10 U.S.C. § 857(b); *United States v. Prow,* 13 U.S.C.M.A. 63, 32 C.M.R. 63 (1962). Because the accused was tried by special court-martial, the maximum confinement upon reassessment would be six months. Since more than six months have elapsed since the sentence was adjudged, the accused would not actually *serve* any confinement. However, at a rehearing, the court may impose a bad conduct discharge or it may, within the limit of that maximum, impose a lesser degree of lesser form(s) of punishment. Thus, the court could impose *either* a bad conduct discharge, *or* all other forms of punishment up to the limits authorized at a special

ment to be inappropriate. Accordingly, the sentence is set aside. A rehearing on sentence is ordered.

POWELL, Senior Judge, and KASTL, J., concur.

court-martial. *See, United States v. Keith*, 22 U.S.C.M.A. 59, 46 C.M.R. 59 (1972); *United States v. Brousseau*, 13 U.S.C.M.A. 624, 33 C.M.R. 156 (1963); *United States v. Smith*, 12 U.S.C.M.A. 595, 31 C.M.R. 181 (1961). *See also*, Air Force Manual 111–2, Court-Martial Instructions Guide, 15 October 1971, Appendix 1, page 171. If any confinement is adjudged at a rehearing, it would begin to run from the date announced at such rehearing. Article 57(b), U.C.M.J.