UNITED STATES, Appellee,

v.

Jeffrey A. STOECKER, Specialist Four,
U.S. Army, Appellant.

No. 44,466.

CM 441264.

U.S. Court of Military Appeals.

Jan. 30, 1984.

For Appellant: *Captain Lawrence R. Hughes, Jr.* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel R. Rex Brookshire, II, Major Paul J. Luedtke* (on brief); *Captain Thomas R. Peppler, Captain Jon S. Pascale.*

For Appellee: *Captain Daniel N. Velling* (argued); *Lieutenant Colonel John T. Edwards, Captain Patrick M. Flachs, Captain John L. Plotkin* (on brief); *Colonel R.R. Boller* and *Colonel James Kucera.*

## Opinion of the Court

EVERETT, Chief Judge:

Contrary to appellant's pleas, a general court-martial consisting of officer members convicted him of stealing certain government property valued at about $6,122.00, and of wrongfully possessing 8.13 grams of marihuana, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 934, respectively. Stoecker was sentenced to confinement at hard labor and forfeiture of $100.00 pay per month for 12 months, and reduction to the grade of E–1. The convening authority approved the findings and sentence, and the United States Army Court of Military Review affirmed. *United States v. Stoecker,* 13 M.J. 879 (1982).

Thereafter, we granted review to consider these two issues:

### I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY DENYING APPELLANT'S MOTION TO SUPPRESS THE SEIZED MARIHUANA THAT FORMED THE BASIS OF CHARGE III AND ITS SPECIFICATION.

### II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY DENYING APPELLANT'S MOTION TO SUPPRESS THE MARIHUANA UPON WHICH CHARGE III AND ITS SPECIFICATION WAS BASED AND WHICH WAS OBTAINED FROM THE APPELLANT IN VIOLATION OF ARTICLE 31(b), UCMJ [10 U.S.C. § 831(b)].

### I

In an Article 39(a)[1] session prior to the entry of appellant's pleas, his defense counsel moved to suppress all evidence as to the marihuana which Stoecker was charged with possessing. In opposition to this motion, trial counsel called as a witness Sergeant Joseph Schopper, the military police investigator who had seized the marihuana.

According to Schopper, he had been asked to meet with appellant's company commander, Captain Virgil, who informed him that an individual had come to him and had stated that SP Stoecker had allegedly removed some electronic equipment from one of the warehouses where he works; that the equipment was allegedly an oscilloscope and a tool kit that goes along with it; and that he carried the items out of the warehouse and put them in his car,

---

1. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

a '71 yellow Firebird; and drove from his place of duty out there.

Subsequently, Schopper met with appellant in Captain Virgil's office and explained to him the allegations of larceny. "I made sure that he understood what larceny was and went from there to ask for his consent to search his POV [privately owned vehicle] for this equipment." However, he did not "question" appellant "about the reported larceny," because

I had no intention at all of questioning him at that time. I knew that if the larceny had occurred, that the dollar amount would put it out of MPI purview and into CID purview, so I for that reason didn't question him in order that the CID would be able to handle it.

Appellant signed a Consent to Search Form, which later was received in evidence as Appellate Exhibit VI. After the search of Stoecker's car proved unavailing, "I asked him for consent to search his room in the barracks." Appellant "again agreed and consented to the search, at which time I took the same form that I had for the vehicle" and modified it to include the room.

After appellant granted consent to search his room, he proceeded to the room along with Schopper, Captain Virgil, and another person, Mr. Mitchell, who could identify the stolen items.

As we entered the room, we started searching the room and on the right side of the room, there were two wall lockers with their backs flush against the wall; on top of the wall lockers were several boxes. I asked SP Stoecker ... well, I informed him that I was going to search the boxes and I did and he was helping me search the room. He voluntarily was assisting me; at least I don't recall saying, will you help me. He grabbed a chair, pulled it up to the wall lockers, stood on the chair and started taking the boxes down.

From his vantage point appellant could see on top of the wall locker, but Sergeant Schopper could not. According to this witness:

[A]s I was going through one or two of the boxes he had handed down to me, I was on the right side closest to the wall; SP Stoecker was standing on the chair on my left, CPT Virgil and Mr. Mitchell were over to the left by the door. While I was standing there waiting for him to hand me another box, SP Stoecker reached up with his right hand, keeping his hand past his wrist above the locker, I couldn't see his hand; I saw him move something across the top of the locker and then with his left hand, picked it up and moved it down a little bit further, and after he got it down, he grasped the item with his hand, I could see it was a small green item but I couldn't see exactly what it was, and then he kept his body between me and the item and slid it down the side of his body and tried to put it in his pocket, he raised the flap on his greens to put it in his pocket. Because of my past experience as an investigator for a couple of years, I got a little suspicious as to why he was trying to hide the item, because he could very easily have taken the item with his right hand and handed it to me and he didn't do that; and I started thinking that it could have been an item of evidence, possibly of a criminal offense or just plain something he didn't want me to see. It was small enough that ... it went through my mind that had SP Stoecker taken the equipment then sold it, I believe he had plenty of time to do that, he would have gotten a large amount of money, and he could have been trying to hide it. And that was my reasoning, between the suspicion of moving it and it possibly being money, I asked him to show it to me. He handed it to me and when I opened it up, it had marihuana in it.

On cross-examination, Schopper explained that "[a]fter ... [appellant] had attempted to put it in his pocket, I asked him for the box and he handed it to me." Then he said, "I don't recall exactly what I said, I think it was like, 'give me the box'; I don't recall; I remember saying something like 'give it to me' or 'can I have that,'

something to that effect. I asked him for the box and he did hand it to me."

The box—"a cigarette package size or a little larger"—had room for "a pack of cigarettes and a book of matches" and "was green in color and you couldn't see through it." Schopper conceded that, "because of the fact that I did not question him about anything, I didn't feel it necessary at the time to read him his rights." Moreover, he had not expected to find in the box any of the missing items for which he was searching: "I was reasonably certain that the items would not be in there." Although no one had told Schopper that the stolen "equipment had in fact been sold," nevertheless

> there was a time frame from when the larceny allegedly occurred and the time that I was there, was a couple of hours at least; and due to the way Huntsville and the Arsenal are set up, that was plenty of time in my mind for an individual to drive off post and back and then go back to his room.

He had not informed appellant that he was "looking for money," and he was aware that Stoecker "had consented to search for the oscilloscope and tool case."

On redirect, Schopper testified that, when he first saw the plastic green cigarette case in appellant's possession, he expected to find

> [p]ossibly money, Sir. I know I don't get paid that much and I am sure SP Stoecker doesn't get paid any more than I do; if he had sold the equipment, in my mind, he could have gotten a large amount of money and if he had that much money, since there were witnesses that were making these allegations, I figured he could have been hiding the money because if he were searched and he had that large amount of money, he would have to explain it away; but if he didn't have it and nobody found it, he wouldn't have to worry about it.

At this time Schopper "had no suspicion that box might contain" marihuana. "I wasn't thinking anything about marihuana

at the time." Instead, "[w]hen ... [he] took the box and ... opened it," he "expected to find a quantity of money."

After this witness testified, the military judge heard argument on the motion to suppress. Defense counsel contended that the search could not be justified as a consent search. He also complained that Schopper "never read SP Stoecker his Article 31 rights prior to asking him for the" box.

The judge's ruling was delivered in this language:

> I find that the accused in this case knowingly and voluntarily consented to the search of his room. I also specifically find that the MPI Schopper had reasonable grounds to suspect or believe that the proceeds of a larceny might be in the box which was furtively being handled by the accused, plus the action of the accused to voluntarily take care of the items on top of his wall locker. The only difficulty I have with this case is whether or not consent to search the premises for stolen items also encompasses a consent to search for proceeds in the event those stolen items have been sold. I am satisfied by the testimony of the MPI that when he seized the cigarette box that was being handled in a suspicious manner by the accused that he did in fact believe that it might contain the proceeds of a sale of the stolen items which he was searching for and obviously had not found. Therefore, the motion to suppress the marihuana, the motion to suppress the proceeds of the search is denied.

That ruling, of course, is at issue on this appeal.

II

A. Privilege Against Self-incrimination

█ We can easily dispose of defense contentions predicated on Article 31 and on constitutional safeguards against self-incrimination.[2] No warning of rights under Article 31(b) is required for a valid consent

**2.** U.S. Const. amend V.

to search. *United States v. Coakley*, 18 U.S.C.M.A. 511, 40 C.M.R. 223 (1969). The absence of any warning as to the right to deny consent for a search is merely one factor to be considered in determining whether the consent was voluntary in light of the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

■ In *United States v. Taylor*, 5 U.S.C.M.A. 178, 17 C.M.R. 178 (1954), we ruled that, in connection with a search for marihuana, the suspect should have been warned under Article 31(b) before being asked to point out which clothing was his. Likewise, we have held that an air policeman who strongly suspected that an airman's pass had been taken away by his commander should have warned the suspect before asking him to display his pass. *United States v. Nowling*, 9 U.S.C.M.A. 100, 25 C.M.R. 362 (1958). Those cases are distinguishable here because, when Sergeant Schopper asked appellant to hand over the box, he was not requesting that Stoecker identify the box in any way or verify its ownership. Moreover, appellant's action in handing over the box to Schopper did not constitute any implied representation as to its character or contents. Therefore, unlike the identification of the clothing in *Taylor* or the display of the pass in *Nowling*, Stoecker's delivery of the box to the investigator did not constitute a "statement" within the purview of Article 31(b).

The privilege against self-incrimination is not involved, since no testimonial compulsion was exerted against appellant and he was not forced to communicate anything to Schopper. *Cf. Murray v. Haldeman*, 16 M.J. 74 (C.M.A.1983); *United States v. Armstrong*, 9 M.J. 374 (C.M.A.1980); *United States v. Mara*, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973); *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

■ The situation is analogous to that in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), where the Supreme Court ruled that a taxpayer could be required to produce his records pursuant to a summons from the Internal Revenue Service. There, the investigators relied on court process to obtain delivery of evidence to them. Here, if necessary, Sergeant Schopper could have ordered appellant to hand over the box, since military orders may be used to obtain assistance in an investigation. *See Murray v. Haldeman*, *supra* at 83; *see also United States v. Schneider*, 14 M.J. 189 (C.M.A.1982).

## B. Revocation of Consent

■ Appellate defense counsel remind us that consent for a search "may be limited in any way by the person granting consent, including limitations in terms of time, place, or property and may be withdrawn at any time." Mil.R.Evid. 314(e)(3); *see also United States v. Castro*, 23 U.S.C.M.A. 166, 48 C.M.R. 782 (1974); *United States v. Cady*, 22 U.S.C.M.A. 408, 47 C.M.R. 345 (1973). In their view, appellant's "furtive" effort to conceal the opaque green box on his person constituted "the actual or functional equivalent of withdrawal, in whole or part, of his previously given written consent." *United States v. Stoecker*, *supra* at 881, citing *United States v. Reynolds*, 1 M.J. 823 (A.F.C.M.R.1976).

While we accept the premise that Stoecker could withdraw his consent at any time, we disagree with the defense contention that it was withdrawn simply by the act of appellant—who had volunteered to assist Schopper in the search—in attempting to conceal an object from the eyes of the searching military police investigator. After receiving formal written consent to make a search, a policeman is entitled to clear notice that this consent has been withdrawn. The act of concealment here was too ambiguous to provide such notice. Indeed, appellant probably realized that if at that moment he withdrew his consent to search, the probable effect would have been to focus greater suspicion on himself and on the contents of the box.

## C. Scope of Consent

■ As the military judge perceived, the principal "difficulty ... with this case is whether or not consent to search the premises for stolen items also encompasses a consent to search for proceeds in the event those stolen items have been sold." We must disagree, however, with the judge's affirmative answer to this question. The formal consent to search, which was prepared by Sergeant Schopper himself and signed by appellant, lists two objects of search—namely, "electrical parts and equipment." No one has intimated that the parts and equipment involved here were of a size which would allow them to be placed in the small box. Therefore, when he signed the written consent for the search, appellant would have believed that no occasion existed for an investigator, acting under the authority granted by that consent, to open small boxes or containers. Thus, Stoecker would have retained his reasonable expectation of privacy as to such containers. Indeed, if Sergeant Schopper, the military police investigator, intended a different result, he should have made this more explicit on the form which *he* prepared *for execution by appellant*.

■ The permissible scope of a search must be measured by the authority whereunder it purports to be conducted. In *United States v. Brown,* 12 M.J. 420 (C.M.A. 1982), the accused's company commander had ordered a health and welfare inspection to accomplish certain purposes. During the inspection one of the inspecting platoon leaders found some stolen bonds wrapped in a piece of paper in a pocket of the accused's jacket hanging in his wall locker. We concluded that—in light of the avowed purposes of the inspection, as stated by the company commander—there was no occasion for an inspector to look into a folded piece of paper which he removed from the accused's jacket pocket.

Under that same rationale, we are convinced that it was within the purposes of the consent search for Sergeant Schopper to ask appellant to produce the object which he had slipped furtively into his pocket. As far as we can determine from the record, Schopper's observations might reasonably have led him to believe that the object being concealed was an electrical part, which would come within the consent to search. However, nothing about the exterior of the box gave any indication that it contained "electrical parts and equipment," which were the subject of the consent to search previously given by appellant.[3] Therefore, the prior written consent would not justify Schopper's opening the box.

## D. Plain View

■ At trial the Government sought to invoke the stop-and-frisk doctrine. However, this doctrine depends on "a reasonable belief that the suspect" is dangerous and may gain immediate control of weapons. *Michigan v. Long,* —— U.S. ——, ——, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201, 1220 (1983); *see Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), and *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, it obviously is inapplicable here, because Schopper made clear that at no time did he have any fear for his personal safety, and he was not searching for a weapon.

■ The Government also relies on the "plain view doctrine"—which

authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity.

*Illinois v. Andreas,* —— U.S. ——, ——, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003, 1010 (1983). *See also Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982); *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564

---

**3.** If Sergeant Schopper had been seeking to locate stolen computer chips or other minute objects, appellant's consent to search would have allowed him to examine the box, since the stolen property could fit therein. However, Schopper never claimed that any of the parts and equipment for which he was seeking could have fit within the box.

(1971). However, while the container—the green opaque box—was in plain view after appellant had handed it over to Sergeant Schopper, the contents of the box could not be seen.

Even if he had probable cause to believe that contraband was contained within the box, Schopper was not entitled to open it and examine its contents. *See Walter v. United States,* 447 U.S. 649, 654–55, 100 S.Ct. 2395, 2400–2401, 65 L.Ed.2d 410 (1980); *Arkansas v. Sanders,* 442 U.S. 753, 758, 99 S.Ct. 2586, 2589, 61 L.Ed.2d 235 (1979); *United States v. Chadwick,* 433 U.S. 1, 10, 97 S.Ct. 2476, 2482, 53 L.Ed.2d 538 (1977). The situation here is quite analogous to that in *Walter v. United States, supra,* where twelve large cartons that had been shipped by private carrier were misdelivered. The recipient opened each of the cartons and found individual boxes of films —"on one side of which were suggestive drawings, and on the other were explicit descriptions of the contents," *see* 447 U.S. at 352, 100 S.Ct. at 2399. Having determined that the films probably were obscene, the recipient delivered them to the Federal Bureau of Investigation. Subsequently, without obtaining a warrant, FBI agents viewed the films, and the information learned thereby led to a Federal indictment. The Supreme Court concluded that the warrantless projection of the films constituted an unreasonable search in violation of the Fourth Amendment, even though the agents had ample probable cause to believe that the films were obscene. Similarly, we must hold that Schopper's examination of the contents of the box was not authorized by the plain-view doctrine, even if he had probable cause to believe that the box contained the proceeds of a larceny committed by appellant.

### E. Exigent Circumstances

 As a last resort, the Government would have us rule that Schopper's opening of the box was justified by exigent circumstances. The purported exigency is to be found in the possibility that, if left in possession of the box, appellant might destroy or dispose of its contents.

When examined closely, this claim of exigency proves groundless. For one thing, Schopper had not even asked appellant for consent to examine the contents of the box. If such consent was forthcoming, he would have been free to open the box and to see what it contained. Secondly, Captain Virgil, appellant's company commander, was present at the time, and he could have been requested to authorize examination of the box's contents—unless his prior participation in the investigation had disqualified him to give such an authorization. *United States v. Staggs,* 23 U.S.C.M.A. 111, 114, 48 C.M.R. 672, 675 (1974).

Schopper had still another readily available course of action to follow. In view of his reasonable suspicion as to its contents, he could have retained custody of the box until he could seek suitable authorization to open it. As we noted in *United States v. Glaze,* 11 M.J. 176, 177 (C.M.A.1981):

Law enforcement authorities can properly take reasonable measures to assure that, until reasonable investigative steps can be completed, evidence is not destroyed, crime scenes are not disarranged, and suspects do not flee. *Cf. Rawlings v. Kentucky,* 448 U.S. 98, 110 n. 5, 100 S.Ct. 2556, 2564 n. 5, 65 L.Ed.2d 633, 645 n. 5 (1980); Dutile, *Freezing the Status Quo in Criminal Investigations: The Melting of Probable Cause and Warrant Requirements,* 21 B.C.L.Rev. 851 (1980).

Thus, mail may be detained until a warrant can be obtained, *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970), and occupants of a house may be detained while a search for contraband is made pursuant to a valid warrant, *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Recently, in *United States v. Place,* —— U.S. ——, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Supreme Court ruled that a traveler with personal luggage could be temporarily detained for exposure to a trained narcotic detection dog on the basis of reasonable suspicion that the luggage contained narcotics, although period of detention could not be unreasonable under the circumstances.

Stoecker was not a traveler waiting to leave for some distant location. We can perceive no problem if Schopper had retained the box until he could get authority to examine its contents from a military magistrate or a commander who was not disqualified to authorize a search. In view of this readily available alternative for Schopper to pursue, the Government cannot properly claim that the examination of the box was authorized under the doctrine of exigent circumstances.

### III

We conclude that when Sergeant Schopper opened the green opaque cigarette case, he exceeded his authority to search appellant's room for "electrical parts and equipment." Moreover, his action cannot be justified by reason of exigent circumstances or plain view. Since his search of the box produced the evidence that led to appellant's conviction for wrongful possession of marihuana, the findings of guilty on that charge cannot stand.

The decision of the United States Army Court of Military Review is reversed as to Charge III and its specification and the sentence. The findings on Charge III and its specification are set aside, and Charge III is dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Military Review for reassessment of the sentence based on the affirmed findings of guilty.

Judges COOK and FLETCHER concur.