UNITED STATES

v.

**Airman Stevie JENKINS, FR 096–58–5225, United States Air Force.**

**ACM S27424.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 27 Jan. 1987.

Decided 23 July 1987.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Deborah A. Baker.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Lieutenant Colonel Morris A. Tanner, Jr.

Before HODGSON, FORAY and HOLTE, Appellate Military Judges.

## DECISION

HODGSON, Chief Judge:

At trial the appellant moved to suppress the test results of his urine specimen which disclosed the presence of benzoylecognine, a metabolite of cocaine.

In reviewing the trial judge's ruling denying the motion to suppress, some discussion of the facts is necessary. The record established that on 9 August 1986, a resident of the barracks in which the appellant lived called the security police and informed them that he smelled the odor of burning marijuana in the building.

A security policeman with a drug detection dog was dispatched to the building. As he walked down the hall his dog "alerted" on Room B–5 which was solely occupied by the appellant. The base commander was notified of the dog's reaction and a search authorization sought from him. Prior to any reply from the base commander,[1] the appellant walked up and was denied entrance to his room. The security policeman explained that his dog had alerted on the room by sitting down and that the room was thought to contain controlled substances and drug paraphernalia. When the security policeman asked the appellant for permission to search his room, the latter said, "Yeah." Upon being told that the answer would have to be either "yes" or "no," the appellant immediately responded,

"Yes," and gave written consent to search his room.

Marijuana and a makeshift pipe were discovered in the freezer compartment of the refrigerator. Later, the appellant was directed to provide a urine sample under the authority of a search authorization obtained from the base commander. This sample was sent to the Air Force Drug Testing Laboratory at Brooks Air Force Base with instructions that it be tested for marijuana and cocaine. The test was negative for THC, a metabolite of marijuana, but positive for benzoylecognine, a cocaine metabolite.

The appellant's argument challenging the admission of his urine sample is twofold. First, he asserts the consent he gave to the search of his room which resulted in the discovery of marijuana and formed the basis for the seizure of his urine was not voluntary, but was mere acquiescence to the request of the security police who were accompanied by a military working dog. The appellant also urges that the search authorization ultimately obtained to search his room was defective as it was not based on probable cause. Second, the search authorization to seize his urine was overbroad "in that it authorized a search of the ... urine for any evidence of any illegal narcotic." The appellant contends that the government did not have "probable cause" to test his urine for the presence of cocaine metabolites.

■ The question of whether a consent to search is voluntary is one of fact to be determined from the surrounding circumstances and for which the caselaw can provide only general guidance. Each case must be decided on the particulars of the situation in question. *United States v. Wallace*, 11 M.J. 445 (C.M.A.1981). The appellant admitted saying "yes" when asked to consent to a search of his room, but indicated he "felt a little bit intimidated because ... there were two cops there, a dog, and I'm on crutches. It wasn't like a normal situation." He acknowledged the

---

1. A search authorization was ultimately obtained from the commander to search Room B–5.

security police were polite and non-threatening, but thought the request to consent was an order and "something [he] had to do." The security policeman with "Chris," the drug dog, testified that the appellant was never in custody and was free to leave at any time. Further, the appellant was told why they were there and that "Chris" had alerted on his room. The dog handler denied trial defense counsel's suggestion that "Chris" posed a menacing threat and coercive influence, and maintained that his dog was "kicked back mellow ... [with] no aggressive tendencies."

The trial judge found that the appellant's consent to search his room was voluntary and not mere submission to police authority. His finding on this issue of fact, that a valid consent to search was given, is a question of fact that will be accepted on review unless it is unsupported by the evidence or clearly erroneous. *United States v. Turpin*, 707 F.2d 332 (8th Cir.1983). The transcript contains no evidence of coercion, either actual or implied. The trial judge's finding of consent was not clearly erroneous; on the contrary, it was fully supported by the evidence.

The remaining error asserted by the appellant claiming that the government lacked "probable cause" to test his urine for cocaine is innovative but not persuasive. The law is clear that evidence relating to an offense different from that which justified the search can be seized and used against an accused. *United States v. Simpson*, 15 U.S.C.M.A. 18, 34 C.M.R. 464 (1964); *United States v. Owens*, 36 C.M.R. 909 (A.F.B.R.1966). The permissible scope of a search is to be determined by the purposes which justified its inception. *People v. Campbell*, 67 Ill.App.3d 748, 24 Ill. Dec. 404, 385 N.E.2d 171 (1979). Drug abuse among servicemembers not only critically jeopardizes the ability of the unit to perform its military mission, but seriously undermines the health of those individuals so addicted. To combat this threat to our national defense the Air Force, along with our sister services, has developed a comprehensive drug abuse testing program which has a goal, among others, of developing evidence in support of actions under the U.C.M.J., Air Force Regulation 160–23, *Drug Abuse Testing Program*, 31 July 1986, para. 1(e). We take judicial notice that marijuana and cocaine continue to be the most abused illicit drugs, and that on 9 July 1986, The Assistant Secretary of Defense for Health Affairs directed that all urinalysis specimens be tested for cocaine no later than 1 October 1986.

We have no hesitation in holding that the discovery of marijuana together with paraphernalia designed for its use in the Appellant's room provided sufficient probable cause to issue a search authorization directing the appellant to provide a urine sample. *See United States v. Washington*, 9 U.S.C.M.A. 313, 26 C.M.R. 93 (1955). Further, we hold that once the government lawfully possesses a urine sample it may conduct any laboratory test for drugs it wishes on the specimen. *See United States v. Nand*, 17 M.J. 936 (A.F.C. M.R.1984); *see also United States v. Cale*, 508 F.Supp. 1038 (D.C.N.Y.1981).

For the reasons stated, the findings of guilty and the sentence are

AFFIRMED.

Senior Judge FORAY and Judge HOLTE concur.