**UNITED STATES**

**v.**

**Airman First Class Charles E. CANNON,
Jr., FR 332–68–0150, United
States Air Force.**

**ACM 27388.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 21 Oct. 1988.

Decided 11 Aug. 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Captain Laurence M. Soybel.

Appellate Counsel for the United States: Colonel Joe R. Lamport; Lieutenant Colonel Robert E. Giovagnoni; Captain Joseph V. Treanor, III and Major Kingston E. Smith, USAFR.

Before HODGSON, SPILLMAN and PRATT, Appellate Military Judges.

## DECISION

PRATT, Judge:

Consistent with his pleas, appellant was convicted of AWOL, use of cocaine, three larcenies, two lesser-included wrongful appropriations, and an attempted larceny. The military judge, sitting alone as a general court-martial, sentenced appellant to a dishonorable discharge, confinement for 35 months, total forfeitures, and reduction to airman basic. The convening authority approved the sentence as adjudged.

Appellant raises several issues on appeal. We decide each adversely to appellant, and affirm.

## I

WHETHER THE MILITARY JUDGE ERRED BY NOT GRANTING APPELLANT'S MOTION TO SUPPRESS HIS URINE SAMPLE.

This issue, preserved for appeal by a conditional guilty plea, revolves around two separate searches to which appellant purportedly gave his consent. On 4 March 1988, appellant was apprehended for theft by fraud and transported to the Security Police building. In response to an advisement of rights, he elected not to submit to an interview and expressed his desire to consult with counsel. Just minutes later, a Security Police investigator showed appellant an AF Form 1364, Consent For Search and Seizure, read the entire form to him, and requested his consent to search his barracks room and his car. Appellant gave his consent and signed the form. During the ensuing search, a small amount of marijuana was discovered in appellant's room. He was returned to the Security Police building, was re-advised of his rights (to include possession of marijuana), and repeated his earlier elections to avail himself

of counsel and to decline interview.[1] Again, a consent form was shown and read to him in its entirety relating to a search of his urine. Appellant consented to the search and signed the AF Form 1364. Urinalysis ultimately disclosed evidence of use of cocaine.

Appellate defense counsel assert that appellant's consent, in both instances, was not freely and voluntarily given, thus entitling appellant to suppression of the results of his urinalysis. In support of this proposition, appellate defense counsel point to the "inherently coercive" custodial setting, the lack of an opportunity for appellant to consult with counsel, and appellant's inability to effectively deal with Security Police investigators as evidenced by the exercise of his right to counsel.

■■■ The Government has the burden of showing by "clear and convincing evidence" that appellant's consent for search was freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States v. Middleton*, 10 M.J. 123 (C.M.A.1981). *See* Mil.R.Evid. 314(e)(5). Where, as here, the consent is obtained from an individual who is in custody, the inherently coercive nature of that setting requires us to proceed with "special caution" and to place a heavy burden on the Government to prove "free will, unfettered by coercion, pressure or restraint." *United States v. Wallace*, 11 M.J. 445 (C.M.A.1988); *United States v. Thompson*, 12 M.J. 993 (A.F.C.M.R.1982). However, it is well settled that no one factor is dispositive of this issue. Instead, we must carefully review and assess "the totality of all the circumstances" in arriving at a determination of the voluntariness of consent. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina, supra; United States v. Stoecker*, 17 M.J. 158 (C.M.A.1984).

Thus, although the fact that appellant was in a custodial setting is a proper factor for consideration in assessing the "totality of the circumstances," the fact of custody alone has never been enough in itself to establish that consent was coerced. *United States v. Watson, supra*.

■ Likewise, the fact that appellant expressed his desire to consult with counsel prior to any interrogation does not *per se* undermine his subsequent consent to search. *United States v. Roa*, 24 M.J. 297 (C.M.A.1987). In *Roa*, the Court of Military Appeals specifically addressed this issue, citing the fundamental difference between the protection of the Fourth Amendment right against unreasonable searches and the Fifth Amendment right against compelled self-incrimination. The Court held that neither the rule of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), designed to enforce Fifth Amendment protections, nor the rule of *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976), designed to safeguard the protections of the Sixth Amendment, have application to a request for consent to search because "such a request is not questioning in the sense of 'interrogation', and consent obtained is not a 'statement' under Article 31." *United States v. Roa, supra*, at 298–300; *See Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); *United States v. Stoecker, supra; United States v. Spivey*, 10 M.J. 7 (C.M.A. 1980) (Everett, C.J., concurring in the result); *United States v. Morris*, 1 M.J. 352 (C.M.A.1976); *United States v. Rushing*, 17 U.S.C.M.A. 298, 38 C.M.R. 96 (1967); *United States v. Thompson, supra*.

However, appellate defense counsel argue, in effect, that the reasoning of *Roa* has been superceded by the Supreme Court's decision in *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704, (1988). In *Roberson*, an accused in custody and questioned by police about certain burglaries invoked his right not to

---

1. This second attempt to interrogate appellant, even as to a separate offense, would have raised an issue under *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and

*Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) if appellant had agreed to submit thereto. Since he did not, we need not address that issue at this time.

answer questions without first consulting counsel. Three days later, while still in custody, Roberson was readvised of his rights by a different police officer and questioned regarding a different burglary to which he confessed. The Supreme Court held that the constitutional protection afforded a suspect is not "investigation-specific". They reasoned that the request for counsel by a suspect in custody demonstrates the suspect's discomfort with the pressures of custodial interrogation and that this discomfort will not disappear simply because the police approach him about a separate offense. Thus, they held that when a custodial suspect requests counsel, the rule of *Edwards v. Arizona* (prohibiting further questioning until the suspect has had an opportunity to consult with counsel or until the suspect himself initiates further communication with the police) also prohibits questioning the suspect about separate and distinct offenses.

Appellate defense counsel argue that the same constitutional interest expressed in *Roberson* is present in cases involving requests for consent to search. Addressing the case *sub judice*, they reason that appellant's exercise of his right to counsel in a custodial setting demonstrated a discomfort with the pressures of the custodial situation, an inability to deal with authorities, and therefore a lack of voluntariness in *any* further dealings with such authorities without first consulting counsel. They specifically read *Roberson* as expanding the rule of *Edwards v. Arizona, supra,* to include not only a prohibition on questioning a custodial suspect about separate offenses, but also a prohibition on seeking his consent to search.

■ Counsel's argument suffers a faulty premise as it appears to ignore the critical distinction outlined by the Court of Military Appeals in *Roa, supra,* between the intended protections of the Fourth, Fifth and Sixth Amendments. As the Court explained, consent is simply a valid basis for a reasonable search in compliance with Fourth Amendment protections against unreasonable searches and seizures. As noted above, it is *not* a "statement" and a request for it is *not* an "interrogation." Therefore, quite clearly, neither the request for consent nor the consent itself comes under the umbrella of Fifth Amendment protections against compulsory self-incrimination. The *Roberson* decision did nothing to unseat this well-established dichotomy. Accordingly, since the constitutional interest at play in *Edwards v. Arizona* and in *Arizona v. Roberson* involves strictly Fifth Amendment protection, counsel's assertion that the same interest precludes requests for consent to search is simply unfounded. Had the Supreme Court intended such a marked shift in their historic treatment of requests for consent to search, we are confident they would have done so explicitly.

■ While we are unable to accept the defense assertion that appellant suffered the deprivation of a constitutionally protected right, we are not unmindful that the circumstances discussed in *Roberson* (i.e., discomfort with the custodial setting) merit due consideration on the issue of voluntariness. The major difference, of course, is that instead of becoming the object of a rule which would render a suspect's consent involuntary *per se*, those circumstances must be factually assessed on a case-by-case basis for actual impact as part of the "totality of the circumstances" surrounding appellant's consent. In that regard, it should be noted that "the sword may cut both ways." In other words, although invoking one's rights in a custodial setting may be some indication that the suspect is unnerved by the situation and unable to deal with investigators in a sufficiently "unfettered" manner, it may also indicate that the suspect has some comprehension of his legal rights and the presence of mind to assert them within the custodial setting. *See United States v. Middleton, supra* at 133.

■ Another factor, addressed through testimony and argument at trial, merits brief discussion. When asked to consent to a search of his urine, appellant replied, "What if I don't consent?" or words to that effect. The substance and tenor of the response he received was, not

surprisingly, the subject of considerable disparity between the testimony of appellant and the testimony of the Security Police investigators.[2] Having heard the testimony of all parties, the trial judge concluded that the investigators were more worthy of belief. We concur. The judge's findings of fact reflect the following:

> The Accused asked what would happen if he did not consent. He was advised that if he did not consent, that a search would not be conducted unless they got a warrant. He was told the police would contact the SJA concerning whether they had probable cause and then contact the base commander for the search authorization.

If appellant had been told that a search warrant had already been issued, or had even been assured that one could readily be obtained, the voluntariness of his subsequent consent may well have been negated by the spector of "mere acquiescence." *Bumper v. North Carolina, supra.* Instead, in response to a specific query, he received a straightforward, informative response relating the steps that would be taken in an attempt to secure a search authorization. A purely factual statement of an intention to follow a legal course of action does *not* constitute coercion or otherwise vitiate consent to search. *United States v. Rushing, supra.*

Appellant was 25 years old at the time in question, had a high school education, and had been in the service over 2 years. Testimony reflects that appellant had some prior experience with consent searches, having been detained once in 1986 and twice in 1987 and on each of those occasions granting consent to Security Police personnel to search his property. Prior to each request

for consent to search in the case *sub judice*, appellant was given a rights advisement. *See United States v. Insani,* 10 U.S.C.M.A. 519, 28 C.M.R. 85 (1959). In each instance, the requesting investigator read the entire contents of AF Form 1364 to appellant.[3] *See United States v. Watson, supra.* Despite his claims to the contrary, appellant reportedly appeared to be alert, seemed to understand what he was being told, and did not appear to be under the influence of alcohol or drugs.

Considering the totality of all the circumstances attending appellant's two consents for search, and concluding that the findings of fact made by the trial judge are well supported by the evidence of record, *United States v. Middleton, supra,* we conclude that the Government met its burden of proving that appellant's consents to search were freely and voluntarily given.

■ One final aspect of this assignment of error merits brief attention. Appellate defense counsel assert that the search of appellant's urine for cocaine exceeded the scope of his consent inasmuch as his consent was to a search for marijuana only. Citing *United States v. Stoecker, supra,* they correctly note that a person granting consent to search may limit that consent in any way. *See* Mil.R.Evid. 314(e)(3). In this case, however, although it was the discovery of a small amount of marijuana in appellant's locker which generated the request for consent to search his urine, we can find no evidence of any attempt by appellant to specifically limit the scope of the search of his urine to marijuana only. We decline to presume some implicit limitation. Instead, we hold here, as we did in *United States v. Jenkins,* 24 M.J. 846, 848

---

**2.** One of the two investigators present at the time in question recalled the question and testified concerning the answer. The other did not recall any questions being asked by appellant but testified, consistent with the first investigator, as to what reply would have been given in response to such a question.

**3.** In pertinent part, the AF Form 1364, contains the following language:

> I know that I have the legal right to either consent to a search, or to refuse to give my consent ... I also understand that, if I do not

consent, a search cannot be made without a warrant or other authorization recognized in law.

> &ast; &ast; &ast; &ast; &ast; &ast;

> Before deciding to give my consent, I carefully considered this matter. I am giving my consent voluntarily and of my own free will, without having been subjected to any coercion, unlawful influence or unlawful inducement and without any promise of reward, benefit, or immunity having been made to me.

(A.F.C.M.R.1987), *pet. denied,* 26 M.J. 70 (1988), that once the government lawfully possesses a urine sample it may conduct any laboratory test for drugs it wishes on the specimen.

## II

### WHETHER APPELLANT'S PLEA TO THEFT OF THE STEREO WAS IMPROVIDENT.

Appellant pleaded guilty to the theft of a stereo under the following fact situation. The owner, AIC Elias, purchased the stereo at the base exchange on 16 January 1988. On 19 January 1988, according to appellant's testimony during the *Care* inquiry, a reservist known to him only as "Herman" came by his barracks room with the stereo and asked appellant for a ride down to a local pawn shop for the purpose of pawning the stereo. During the ride, through conversation with "Herman", appellant either was told or gleaned that the item had been stolen. For a $20 "cut", appellant agreed to do the actual pawning himself, which he did. At no time did appellant have or share any intent to redeem the stereo at a later time for the purpose of returning it to its rightful owner.

Appellate defense counsel assert that, at the time of the offense, appellant had only the "intimation" from Herman that the item was actually stolen, that he did not know that the item belonged to a certain individual, and that he did not know when it was taken. Thus, the defense contends, there is insufficient evidence to support his guilty plea to larceny of the stereo. We disagree.

As noted in the rendition of facts above, appellant did not personally participate in the initial taking of the stereo from its owner. Instead, he was charged as a principal in the theft, as an aider and abettor. In order to sustain a guilty plea on this theory, it is necessary that appellant knew the stereo was stolen and assisted in its asportation, thereby sharing the perpetrator's criminal purpose. If, as the defense asserts, appellant did not have sufficient knowledge that the stereo was stolen, his plea would indeed be improvident. Two separate colloquies with the military judge reflect the state of appellant's knowledge and belief:

MJ: Okay, now charge IV specification 1, the stereo?

ACC: Yes, this was—I had gotten out of the hospital that morning and I was in the room and a friend came by around, I'd say about 9:00 o'clock that morning and knocked on my door. I told him to come in and he came in. He had the component set. When he came in, you know, I was like, what you doing with it? He said he wanted to pawn it and he wanted me to take him for a ride to a pawn shop. So I put my clothes on and I took him to a pawn shop. *On the way, you know, he had told me that he had stole it.* He was like he wanted to pawn it so I said all right then. *He told me there wasn't no serial number,* you know, but I didn't look to see if there was a serial number or anything like that on it. I took it in and pawned it and that was it.

\*     \*     \*     \*     \*     \*

MJ: Was that property his [Herman's]?

ACC: On the ride over *he told me it wasn't.*

MJ: He told you it was something that he had stolen?

ACC: *He just told me that he wanted to pawn it and in a way he kind of made it seem like he had stolen it.*

MJ: You had a strong suspicion at least that it wasn't his stuff?

ACC: Yes, sir.

MJ: That he had ripped it off from somewhere?

ACC: Yes, sir.

\*     \*     \*     \*     \*     \*

MJ: This fellow Herman, he told you enough that *you knew that this was stolen property?*

ACC: Yes, sir.

\*     \*     \*     \*     \*     \*     \*

MJ: At the time you hocked the property, *you knew it was stolen?*

ACC: Yes.

(Emphasis added).

These exchanges readily indicate that, at the time of his offense, appellant believed that the stereo was stolen and he had more than an ample basis for such belief. Appellant did not recount his exact conversation with Herman on the way to the pawn shop, but it clearly led appellant to correctly conclude that the stereo was stolen property. Indeed, appellant's initial account, prior to probing questions by the trial judge, included the statement, "On the way, you know, he had told me that he had stole it." In addition, Herman's reassuring announcement that the item had no serial number makes no sense except in the context of a stolen item. Similarly, were it not stolen, why would appellant be the one to pawn it while Herman waited in the car, and why would appellant receive $20 of the proceeds for his efforts? Taken as a whole, we have no difficulty in finding that the providency inquiry was adequate on the issue of knowledge.

■■■ The issue of asportation is somewhat more troublesome. The crime of larceny continues through the asportation phase. *United States v. Escobar*, 7 M.J. 197 (C.M.A.1979). Thus, anyone who knowingly assists in the act of carrying away stolen property is a principal in the larceny, whether or not that assistance was prearranged. *United States v. Bryant*, 9 M.J. 918 (A.C.M.R.1980). The difficult aspect of applying this principle, however, is determining when the original asportation phase has been completed under the facts of each particular case. In *United States v. Escobar, supra,* the Court of Military Appeals cited with approval the following passage from *United States v. Barlow*, 470 F.2d 1245, 1253 (D.C.Cir.1972):

The crime of larceny obviously continues as long as the asportation continues and the original asportation continues at least so long as the perpetrator of the

crime indicates by his actions that he is dissatisfied with the location of the stolen goods immediately after the crime and with no more than a few minutes delay causes another to continue the asportation.

Thereafter, in *United States v. Seivers*, 8 M.J. 63, 65 (C.M.A.1979), the Court of Military Appeals further explained, "It is well settled that the larceny continues until such time as its fruits are secured in a place where they may be appropriated to the use of the perpetrator of the scheme."

■■■ The main problem in attempting to apply these principles to the case *sub judice* is that there is scant information concerning the initial theft, particularly its timing. A stipulation of fact entered into by appellant at trial establishes that AIC Elias purchased the stereo on 16 January. During the providency inquiry, appellant stated that Herman showed up at his room with the stereo at about 0900 hours on 19 January. Appellate defense counsel argue that the theft could have occurred anytime between the 16th and 19th of January, and that the lack of certainty on that issue precludes a determination that the larceny was still in its asportation phase at the time appellant involved himself with Herman. This reasoning fails, however, in light of the stipulation of fact which establishes that the theft occurred on 19 January.[4] Thus, we know that at 0900 hours the morning of the theft, the perpetrator sought appellant's assistance. The readily apparent object of his scheme was to transform the stereo into money by means of pawning it. Thus, regardless of the precise amount of time between the actual theft and Herman's appearance at appellant's door, it seems circumstantially reasonable to conclude that Herman was "dissatisfied with the location of the stolen goods" and that the asportation phase of this larceny was still ongoing. Accordingly, we find that the trial judge was justified

---

4. Where not inconsistent with facts developed during the providency inquiry, the Government is entitled to rely on, and have the benefit of, a stipulation of fact which was freely and knowingly entered into by appellant at trial. It may well be that the Government had independent evidence of the date of the theft but, in reliance on the stipulation, did not introduce it. Appellant will not be heard to contest, for the first time on appeal, the accuracy of a stipulation under these circumstances.

in accepting appellant's guilty plea to larceny.

■ In the alternative, if the asportation of the stereo were deemed to have been completed prior to appellant's involvement with Herman, appellant's version of events would establish his guilt as an accessory after the fact to the larceny, obviously an offense closely related to the charged larceny. *See* Art. 78, UCMJ, 10 U.S.C. § 878; MCM, Part IV, paragraph 3 (1984). In these situations, the Court of Military Appeals has consistently held that the accused's plea of guilty may be treated as provident. *United States v. Hubbard,* 28 M.J. 203 (C.M.A.1989); *United States v. Epps,* 25 M.J. 319 (C.M.A.1987); *United States v. Wright,* 22 M.J. 25 (C.M.A.1986); *United States v. Graves,* 20 M.J. 344 (C.M. A.1985); *United States v. Mazur,* 13 M.J. 143 (C.M.A.1982) (Everett, C.J., concurring); *United States v. Felty,* 12 M.J. 438 (C.M.A.1982). In the recent *Hubbard* case, the Court referred approvingly to a passage from their earlier decision in *United States v. Epps, supra* at 323:

> if an accused pleads guilty and then at the providence inquiry, he gives sworn testimony which clearly establishes his guilt of a different but closely-related offense having the same maximum punishment, we may treat that accused's pleas of guilty as provident.

Here, of course, the maximum authorized punishment is not the same. The offense of being an accessory after the fact carries a maximum punishment, as to confinement, of one-half of the maximum confinement authorized for the crime to which the accused was an accessory. *See* MCM, Part IV, paragraph 3e (1984). In this case, that translates as 5 years for larceny, but only 2½ years for being an accessory after the fact. The Court of Military Appeals faced a similar situation in *Hubbard, supra,* with 5 years for larceny and 3 years for receiving stolen property. Noting the minimal impact on total maximum confinement, considering all the findings of guilty in the case (with larceny, 45 years and 6 months; with receiving stolen property, 43 years

and 6 months), the Court found the *Epps* rationale still applicable, especially where Hubbard's sentence included only 2 years confinement. *See also United States v. Graves, supra* (finding the maximum penalty for an accessory after the fact to larceny "very similar" to that for a receiver of stolen property).

We reach a like conclusion in this case, where we deem the impact on the maximum confinement (with larceny, 26 years; with accessory after the fact, 23 years and 6 months) to be minimal, particularly where appellant's approved sentence included confinement for only 35 months.

### III

■ Citing *United States v. Grostefon,* 12 M.J. 431 (C.M.A.1982), appellate defense counsel invite our attention to an issue regarding pretrial confinement. This issue, not raised either before or during this appellant's trial, is raised now by an unsigned, handwritten letter addressed "To whom it may concern."[5] On its face, it offers no certainty as to author, reliability of content, or intended recipient. Under these circumstances, we find this writing insufficient to merit cognizance by this court of the matters raised therein.

The remaining assigned error is determined to be without merit.

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

Chief Judge HODGSON and Judge SPILLMAN concur.

---

5. The Defense MOTION TO SUBMIT DOCUMENTS is granted.