534

UNITED STATES, Appellee,

v.

**Private (E–2) Jerome M. EPPS, 263–49–6117, United States Army, Appellant.**

**SPCM 20931.**

U.S. Army Court of Military Review.

5 April 1985.

Lieutenant Colonel Paul J. Luedtke, JAGC, Captain Frank J. DiGiammarino, JAGC, and First Lieutenant Kevin T. Lonergan, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Captain Garreth E. Shaw, JAGC, were on the pleadings for appellee.

Before SUTER, RABY, and NAUGHTON, Appellate Military Judges.

OPINION OF THE COURT

RABY, Senior Judge:

The accused pled guilty to and was convicted of a $90 larceny from his roommate

in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921 (1982) [hereinafter cited as UCMJ]. The theory of the case against appellant was that he became a principal under Article 77(1), UCMJ, 10 U.S.C. § 877(1), by aiding, abetting, counseling, commanding, or procuring the commission of this larcenous act.

Appellant asserts that the military judge erred by accepting appellant's guilty plea notwithstanding substantial factual inconsistencies as to whether appellant participated in the commission of the offense or was a mere bystander.

The facts pertinent to the resolution of this issue are as follows. In accordance with the terms of his negotiated pretrial agreement, appellant entered a detailed stipulation of fact[1] which was introduced in evidence and considered by the judge in determining the providence of appellant's guilty plea. After advising appellant of the elements of larceny, the military judge conducted an inquiry into the circumstances surrounding the commission of the offense. The judge did not advise appellant on the record of the pertinent law of principals, although he did ascertain that appellant had consulted with his counsel regarding this legal principle.[2]

During the military judge's factual inquiry, appellant made several statements which we conclude are facially inconsistent with the accepted stipulation of fact and the permissible inferences to be drawn therefrom. For example, appellant stated under oath that he was not aware that Private Usher intended to steal from appellant's roommate, Private Lightner, until after he and Private Usher entered appellant's room. That night, when Private Usher asked appellant to help him take Private Lightner's money, the appellant said "no." Appellant also stated that Private Usher removed Private Lightner's wall locker key from the top of the locker and offered the key to the appellant, who declined the offer and refused to open the locker. Appellant claimed that it was Private Usher alone who opened the wall locker, searched for Private Lightner's wallet, and removed the wallet from the locker after finding it. Appellant maintains that he "was just standing there" watching while Private Usher took the wallet. Appellant denied watching Private Lightner and admitted no facts from which it could be inferred that he was a lookout. Appellant admits that after the wallet came under Private Usher's control, the latter opened it and said he would split the proceeds with appellant. Appellant admits that he took a portion of the stolen money that night and some more the following day. However, appellant stated that Private Usher did not announce his intent to split the money until after he had removed the money from the wallet. At the time appellant initially received part of the stolen money, the wall locker was still open.

---

1. This stipulation states, in pertinent part:
 On the night of 9 May or early morning of 10 May 1984 the accused and Private E2 Henry E. Usher Jr. entered the room of the victim, Private E2 Michael A. Lightner. PV2 Usher reached on top of the victim's wall locker and took a key which the victim kept hidden there. *The accused and PV2 Usher unlocked the victim's wall locker, reached into a pair of the victim's pants, and removed the victim's wallet.* The accused and PV2 Usher wrongfully took $90.00 from the wallet of PV2 Lightner. The $90.00 belonged to PV2 Lightner. They each kept $45.00.
 At the time the accused and PV2 Usher took the money, the taking was with the intent to permanently deprive the victim of the use and benefit of the money or to permanently appropriate the money for the use of the accused or for any person other than the victim.

 Before he was apprehended and confessed to the larceny, the accused had not offerred [sic] to return the money and had not voluntarily come forward on his own initiative to admit his crime.
 (Emphasis added.)

2. The record of trial contains the following exchange:
 M.J.: Now, have you talked with your counsel about the legal principle of being a principal to a crime, you know, one who aids and abets in the commission of a crime?
 ACC: Yes, sir.
 M.J.: Well, do you feel that your conduct aided or abetted the commission of this crime?
 ACC: Yes, sir.

Private Usher closed the locker and left with the portion of the stolen money that he had retained. Appellant, who was very intoxicated that evening, moved a few feet to his bed and went to sleep. He slept with his clothes on and with the stolen money in his pocket.[3]

 Appellant admitted that at the time the money was taken he knew it was wrong and had no intention of returning the money to his roommate. Appellant also claimed, however, that at the time the money was split, he did not think he was involved in the commission of a crime. In response to a question by the military judge as to whether appellant's acceptance of the money "made it a little easier for Usher to go through with" the larceny, appellant responded, "It's possible, sir, I don't really know." Appellant also stated he "wouldn't think" his acceptance of the money would in any way encourage or assist Private Usher. Appellant subsequently stated, in response to further questions by the military judge, that he encouraged and aided Private Usher by "not stopping" him, by not refusing to accept the money, and by telling him that he "didn't care" if Private Usher stole Private Lightner's money.[4]

We find that the facts of this case are readily distinguishable from those in Unit-

ed States v. Crouch, 11 M.J. 128 (C.M.A. 1981). In view of appellant's general in-court denial of complicity, his confused, hesitant, and occasionally conflicting responses to the military judge, and the inconsistent facts contained in the stipulation of fact, we find this case closer to the facts of United States v. Craney, 1 M.J. 142 (C.M.A.1975), and United States v. Radzewicz, 16 M.J. 781 (A.C.M.R.1983). We also note that "in deciding a providence issue, the sole question is whether appellant made a statement during the trial which was in conflict with his guilty plea. It is unnecessary that his statement be credible; instead, it only need be inconsistent." United States v. Lee, 16 M.J. 278, 281 (C.M.A.1983); see also United States v. Jemmings, 1 M.J. 414, 418 (C.M.A.1976) (in determining the providence of an appellant's guilty plea, his version of the facts must be accepted "at face value").

 We further believe that the stipulation of fact contains certain matters which are inconsistent with the appellant's sworn providence responses. During the providence inquiry, the military judge correctly advised the appellant: "[A] stipulation of fact ordinarily cannot be contradicted. If this stipulation should be contradicted after I have accepted your guilty plea, I will have to reopen the providency inquiry".[5]

---

3. In view of our disposition of this case, we need not determine the exact point at which the larceny terminated under the unusual facts of this case. The principle of asportation has been the subject of much discussion. See generally United States v. Escobar, 7 M.J. 197 (C.M.A. 1979); United States v. Bryant, 9 M.J. 918 (A.C. M.R.1980); United States v. Barlow, 470 F.2d 1245 (D.C.Cir.1972).

4. See United States v. Knudson, 14 M.J. 13, 15 (C.M.A.1982), which establishes that it is necessary "to show some affirmative participation which at least encourages the principal to commit the offense in all its elements as defined by statute." (Emphasis supplied.) We believe neither that appellant had a legal obligation to stop this larceny, United States v. Sanders, 34 C.M.R. 304 (C.M.A.1964), nor that his mere words constituted some form of "encouragement" within the meaning of Article 77, UCMJ. Even if we found otherwise, however, this would not be enough. As the Court of Military Appeals said in United States v. Knudson, 14 M.J. at 15, "The

law requires that it be established that there is a concert of purpose or the aiding or encouraging of the commission of the criminal act and a conscious sharing of the criminal intent." (Emphasis added.) We find that the military judge failed to ascertain, by eliciting an informed response from appellant, that the latter consciously shared in the perpetrator's criminal intent. We consider this a fatal flaw in the providence inquiry in view of appellant's express denial on the trial record that he shared such a criminal purpose.

5. Subsequently, the record contains the following exchange regarding the stipulation:
 M.J.: And is [the stipulation] accurate?
 ACC: Yes, sir.
 M.J.: Is there anything in here you believe is not true?
 ACC: No, sir.
 M.J.: Now, you hesitated, are you sure of that?
 ACC: Yes, I was looking it over, sir.

Although some of appellant's sworn providence responses were at variance with the stipulation of fact, the military judge attempted neither to call appellant's attention to these matters nor to resolve this factual conflict. Considering appellant's less than persuasive acquiescence on the record to a rendition of the facts which would establish the providence of his guilty plea, it was error for the military judge to fail both to discuss these inconsistencies and to seek resolution of the factual conflicts. *Cf. United States v. Dunbar,* 43 C.M.R. 318, 321 (C.M.A.1971); *United States v. Care,* 40 C.M.R. 247 (C.M.A.1969); *United States v. Kaufman,* 46 C.M.R. 822 (A.C.M.R. 1972).

 Accordingly, we find that the military judge erred by failing to explain the pertinent portions of the law of principals to the appellant, by failing to resolve inconsistencies between the facts alleged in the stipulation and those asserted by the appellant during the providence inquiry, and by accepting his pleas of guilty notwithstanding the appellant's failure to admit the requisite facts establishing guilt under the theory of principals.[6] "[C]onsistency between what is charged and pled with what is presented at trial must exist and inconsistency will invalidate the plea." *United States v. Roby,* 49 C.M.R. 544, 546 (C.M.A. 1975); *United States v. Irving,* 2 M.J. 967, 968 (A.C.M.R.1976). We find that the cumulative effect of these errors negated the providence of appellant's guilty plea.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge NAUGHTON concurs.

. . . .
M.J.: Now, have you had a chance to read the Stipulation?
ACC: Yes, sir.
M.J.: Is there anything that you feel is untrue or you wish to change?
ACC: No, sir.

SUTER, Chief Judge, dissenting:

The majority has gone to great lengths to find error in this case. Indeed, this case represents the epitome of legal hair splitting. It is this type of judicial frolicking that erodes confidence in criminal law, military or civilian. The findings and sentence should be affirmed. It would be shocking, especially to the appellant, to do otherwise.

In consonance with a pretrial agreement, the appellant pled guilty to larceny. The facts in this case are clearly and adequately set forth in a stipulation of fact that appears in footnote 1 of the majority opinion. This stipulation was agreed to by the appellant and it was carefully explained to him by the military judge before being received in evidence. The military judge determined that appellant understood his guilty plea, explained to him the elements of larceny, and ascertained that he had consulted with his counsel regarding the law of principals. The judge then made further inquiry by asking the accused questions as required by *United States v. Care,* 40 C.M.R. 247 (C.M.A.1969).

During questioning by the military judge, the appellant did make some isolated statements that, standing alone, could be construed as inconsistent with his guilty plea. The majority has seized upon some of these apparent inconsistencies and forged a theory that requires setting aside a conviction which should not be disturbed. My reading of the record reveals much more than the majority opinion reflects.

The appellant testified that after a night of drinking alcoholic beverages off post he returned to his barracks and was informed by the charge of quarters that Private Usher was looking for him. Appellant went to his room where one of his roommates, Private Lightner, was sleeping. No one else was in the room. A few minutes later,

6. If writing on a "fresh slate," we might not require the military judge to advise the appellant *sua sponte* of the law of principals once it has been ascertained on the record that appellant's defense counsel has already done so. We are not, however, writing on a clean slate and we will follow applicable precedent as long as it remains viable.

appellant went to Usher's room. They both returned to appellant's room and Usher mentioned a conversation of the previous day during which Usher had told appellant that Usher and Private Cotton had taken some money from Private Lightner. Usher then went to Lightner's wall locker, got the key, unlocked it, searched for a wallet, found it, and removed a $50 bill and two $20 bills. Usher gave appellant the two $20 bills and kept the $50 bill.[7] Appellant stated that when Usher reminded him of the prior theft, he "kind of figured ... out" Usher's current intent. He further stated that he had declined Usher's invitation to help him remove the money but had not done anything to stop him. He just stood and watched. After the proceeds were divided, Usher departed and the appellant went to bed.

The following are excerpts from the record:

MJ: How did Usher get into the room?

ACC: He came in the room right after I did, sir.

. . . .

MJ: Did you let him in?

ACC: Yes, sir.

MJ: Did you let him in with the knowledge that he was going to rip off—

ACC: At the time, no, sir. I didn't find out until he reminded me of what he told me earlier that day, sir.

. . . .

MJ: At the time the money was taken did you realize it was wrong.

ACC: Yes, sir.

MJ: The Stipulation says that you intended to keep the money permanently. Is that true?

ACC: Yes, sir.

MJ: And you had no desire or intention of giving the money back to Lightner then. Is that right?

ACC: Yes, sir.

MJ: Is it really right, is that the truth?

ACC: At the time, yes, sir.

MJ: At the time, that's what we're talking about, on the evening or early morning of the 10th, whichever it was.

ACC: At the time, yes, sir.

MJ: Now, when you say you were intoxicated what influence did the intoxication have on your ability to think? Were you still able to realize it was wrong to take the money?

ACC: I realize it was wrong to take the money, sir; but, at the time, as I said earlier, I didn't care. I can't really state whether or not the intoxication had anything to do with it or not, I really don't know, sir.

MJ: Well, when he handed you the money what was your intent? What were you thinking at the moment he handed you the money?

ACC: I needed the money, sir.

MJ: So you were going to keep it for yourself?

ACC: Yes, sir.

. . . .

MJ: You were still able to understand it was wrong and still took the money?

ACC: Yes, sir.

MJ: And you were still able to entertain the idea that you were going to keep this money yourself?

ACC: Yes, sir.

. . . .

MJ: Do you think that encouraged him in any way or assisted him?

ACC: Did I encourage him, sir?

MJ: Right. By you accepting the money, do you think that encouraged Usher on?

ACC: I really don't know. As far as my opinion of it, I wouldn't think so, sir.

MJ: Do you think it aided him in any way?

ACC: Yes, I did, sir.

MJ: How do you think your conduct aided Usher?

ACC: How do I think, sir?

MJ: Yes.

ACC: Well, sir, I guess by him coming in the room with me, sir, and by me not stopping him from doing it, I guess

7. Usher gave the appellant an additional $5 the following day.

that would have encouraged him, sir. . . . not encouraged him, but at the time did aid him, because I didn't do nothing to stop him. And I didn't refuse the money, sir.

. . . .

MJ: So is that what you told him, hey, I don't care man?

ACC: Yes, sir, those are my exact words.

MJ: And what did he do after you said, I don't care man?

ACC: He proceeded to get the key and open his wall locker.

MJ: So, you think that by using those words that that encouraged him to go ahead and get the key then?

ACC: Yes, sir.

MJ: I mean, is that what you really think?

ACC: Yes, sir.

. . . .

MJ: And so, by you saying, hey, I don't care, that encourage[d] him to go ahead with it, do you think?

ACC: Yes, sir.

MJ: Are you convinced of that?

ACC: Yes, sir.

MJ: You knew then at the time, or did you know that he was going to take that money, that he was going to steal from Lightner? Did you know that was his intent?

ACC: At the time, sir, yes, sir.

. . . .

MJ: Now, have you talked with your counsel about the legal principle of being a principal to a crime, you know, one who aids and abets in the commission of a crime?

ACC: Yes, sir.

MJ: Well, do you feel that your conduct aided or abetted the commission of this crime?

ACC: Yes, sir.

MJ: How do you feel that it aided or abetted?

ACC: Well, sir, by my attitude, by me not stopping him and by me taking the money, sir.

MJ: Do you feel that you had a duty to stop him as a roommate, or what would cause you to have a duty to stop him?

ACC: Because he wanted to steal the money.

MJ: You're convinced in your own mind that you encouraged him to go ahead with this then?

ACC: Yes, sir.

The military judge then asked counsel for their theory as to asportation. He asked, "Do you feel that the asportation of the money was complete when it was removed from the billfold, or do you think the crime was not complete until after it was divided and removed from the room?" Trial and defense counsel agreed that the asportation was not complete until the money was divided. The judge then asked appellant if he understood what this meant and received an affirmative response.

Several additional excerpts from the record warrant attention:

MJ: And as far as the amount in question, do you agree that even though you didn't receive the full $90, that as an aider and abettor you're just as guilty of taking the $90 as if you had personally received it?

ACC: Yes, sir.

MJ: Do you understand that?

ACC: Yes, sir.

MJ: Do you have any questions about that?

ACC: No, sir.

MJ: Even though you only received $45 of it?

ACC: Yes, sir.

. . . .

MJ: And I take it that neither you or Usher had permission by Lightner to take his money?

ACC: No, sir.

MJ: And both of you knew that it was wrong to take the money?

ACC: Yes, sir.

I quote at great length from the record for two reasons: first, to show that there is no substantial or credible inconsistency between the appellant's plea of guilty and the

evidence elicited during the plea inquiry; and second, to demonstrate that the military judge did adequately explain to the appellant the principle of aiding and abetting. Like many who plead guilty, the appellant simply found it difficult to completely, publicly, and eloquently state each and every minute detail of his delict. *United States v. Young*, 2 M.J. 472, 476–77 (A.C.M.R.1975). Here, each time the appellant hedged, the military judge probed. This jurisprudential mating dance continued until it was clear to all parties that the appellant had entered a provident plea. The majority in this case, for reasons unclear to me, failed to reach this same conclusion based on the facts of record. Thus, an analysis of the law is required.

Article 45(a), UCMJ, 10 U.S.C. § 845(a), provides that: "If an accused ... after a plea of guilty sets up matter inconsistent with the plea, or if it appears that he has entered the plea of guilty improvidently or through lack of understanding of its meaning and effect, ... a plea of not guilty shall be entered in the record...." This principle of law was analyzed by the United States Court of Military Appeals in *United States v. Logan*, 47 C.M.R. 1 (C.M.A.1973). The issue in that case was the providence of a guilty plea in light of the accused's presentence testimony concerning threats which had been made against his family's safety if he failed to cooperate in the criminal activity to which he had just pled guilty. Chief Judge Darden indicated that a necessary corollary of the Article 45 requirement is "that the accused set up something that is truly inconsistent with his plea." 47 CMR at 2. He observed that a plea must be set aside if the accused's testimony "reasonably raise[s] the question of a defense," citing *United States v. Timmins*, 45 C.M.R. 249, 253 (C.M.A.1972), but found that there is no inconsistency when the accused cannot recall the factual basis for the charges but is satisfied from the evidence that he is guilty, citing *United States v. Luebs*, 43 C.M.R. 315 (C.M.A. 1971); *United States v. Butler*, 43 C.M.R. 87 (C.M.A.1971). Additionally, in *United States v. Timmins*, 45 C.M.R. at 252,

Judge Duncan stated that when the military judge believes that the accused has presented matters inconsistent with his plea, "the judge has an obligation to discover from the accused *his* attitude regarding the potential defense" (emphasis in original).

In the case under consideration, nothing in the appellant's testimony reached such a plateau that it "reasonably raised the question of a defense." Even if it did, the military judge was satisfied that he discovered "from the accused *his* attitude regarding the potential defense." It is evident that neither the military judge, the appellant, nor his counsel found merit in any potential defense. They found nothing inconsistent between the appellant's testimony and the stipulation of fact and they harbored no notion that a court would find credible the theory that appellant was a mere bystander. Even if the appellant and his counsel perceived that there was a possibility of a defense, this Court should not at this late date decide that there was a requirement to raise it. In many cases there is the tactical possibility of raising a defense but the accused and defense counsel know that the contention has minimal merit. *See United States v. Logan*, 47 C.M.R. at 3. Lastly, it is difficult to square with reasonableness how the appellant's plea in this case is improvident, bearing in mind that he persisted in his assertion of guilt during questioning by the military judge that covered some twenty-seven pages of the record, when in *United States v. Luebs, supra*, it was held that an accused's guilty plea could be received even though he could neither recall the activity charged nor provide a factual basis for the charges.

Assuming that the military judge did not adequately explain the principle of aiding and abetting to the appellant, the Court of Military Appeals has held that a military judge need not give such an explanation if the evidence of record establishes that the accused was an aider and abettor. In *United States v. Crouch*, 11 M.J. 128 (C.M. A.1981), a guilty plea case, the Court found

that the appellant's factual account of the incident established his role as an aider and abettor. Failure of the military judge to specifically inquire about the appellant's intent did not require reversal. The Court observed that it has "always rejected such a structured formulistic interpretation of *United States v. Care, supra.* Rather, the Court has examined the entire inquiry to ascertain if the appellant was adequately advised." 11 M.J. at 129–30. The Court distinguished *United States v. Craney*, 1 M.J. 142 (C.M.A.1975), in which the accused denied, rather than admitted, complicity in the offense. The case under consideration is precisely like *United States v. Crouch, supra,* and we should accept its rationale. Judge Cook, who authored the opinion in *Crouch,* took a common sense approach. Chief Judge Everett concurred. They rejected the "form over substance" theory offered by Judge Fletcher in his dissent. The reasoning of the dissent in *Crouch* is what led our own court, in *United States v. Radzewicz,* 16 M.J. 781 (A.C.M.R.1983) (one judge dissenting), to set aside a guilty plea because the military judge did not explain to the accused the concept of criminal responsibility as an aider and abettor. This result obtained although the accused admitted both that he understood all of the elements of the offense charged and that they correctly described what he did, and although the military judge ascertained that the defense counsel had explained to the accused the concept of aiding and abetting. The better reasoning in that case was forwarded by Judge Werner in his dissent. His position in that case is similar to mine in this one.

A survey of the decisions by appellate military courts concerning guilty pleas leads me to conclude that we have strayed far beyond the limits of promoting and protecting the fundamental fairness required by the seminal decision of *United States v. Care, supra.* Consider the plain facts in this case: the appellant pled guilty; he persisted in his plea after consulting with his counsel and after exhaustive questioning by the military judge about the offense and related matters; he described his complicity in the offense of larceny; he agreed to a stipulation of facts admitting his guilt; the allied papers contain confessions by the perpetrator, Usher, and appellant; and the defense counsel stated there were no defenses in the case. We must give greater weight to the trial judge's determination of plea providence in cases such as this and not shackle the judge with additional meaningless procedural requirements which do nothing more than turn fact to fantasy. A new, rational standard of guilty plea review should be mandated by the Court of Military Appeals. The recent decision in *United States v. Remai,* 19 M.J. 229 (C.M.A.1985), is a splendid example of how our high court can overrule unwarranted precedent.

I would affirm the findings and sentence.