**UNITED STATES, Appellee,**

v.

**Roger G. GRAVES, Specialist Four, U.S. Army, Appellant.**

No. 46,924.
CM 443068.

U.S. Court of Military Appeals.

Sept. 16, 1985.

For Appellant: *Captain Robert S. Johnson* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Harry L. Williams, Jr.* (on brief); *Captain Michael D. Graham.*

For Appellee: *Captain Garreth E. Shaw* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Lieutenant Colonel Thomas M. Curtis* (on brief); *Lieutenant Colonel Adrian J. Gravelle.*

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried at Fort Benning, Georgia, by a military judge alone sitting as a general court-martial. In accordance with his pleas, he was convicted of three specifications of absence without leave, two specifications of larceny, two specifications of forgery, and one specification of receiving stolen property, in violation of Articles 86, 121, 123, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 921, 923, and 934, respectively. He was sentenced to a dishonorable discharge, confinement for 7 years, total forfeitures, and reduction to pay grade E-1. The convening authority reduced the confinement to 6 years but

otherwise approved the findings and sentence as adjudged. After the United States Army Court of Military Review affirmed in a short-form opinion, we granted review to consider this issue:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ACCEPTING APPELLANT'S PLEAS OF GUILTY TO RECEIVING STOLEN PROPERTY (ADDITIONAL CHARGE AND ITS SPECIFICATION) BECAUSE THE POSSESSION BY THE APPELLANT WAS INSUFFICIENT TO SUPPORT THE FINDINGS OF GUILTY.

We affirm.

## I

During appellant's providence inquiry, he stated that he encountered two acquaintances who were seeking to "get rid of" some office machines. As Graves admitted to the military judge, he knew the machines had been stolen and later he discovered that they were government property. "I rode them around to" various pawn shops in Columbus, Georgia; and eventually they found a pawn shop where the machines were disposed of for "[m]ore than about $250.00," of which Graves received $50.00.

Appellant conceded that he had helped carry the office equipment into the pawn shop; and he answered affirmatively when the judge inquired whether he had "them in ... [his] possession at some time or another." Moreover, he affirmed that he had no question about any of the elements of the offenses, as earlier explained to him by the judge, and that those elements accurately described his conduct.

According to a stipulation of fact received in evidence during the providence inquiry,

> [t]he total value of the four business machines unlawfully received by the accused was $2656, and this property belonged to the United States. The ac-

cused knew, at the time he unlawfully received the IBM Selectric II, the two Royal SE5000CD's and the Remington Sperry Rand machine, that these had been stolen by some person other than himself; and the accused, at the time on active duty in the Armed Forces of the United States, knowingly received the four stolen business machines in Columbus, Georgia. The accused admits these machines are the property of the United States. These machines were subsequently pawned by the accused in Columbus, Georgia, and since have been recovered. This knowing receipt of stolen US property by the accused has never been reported to any civilian law enforcement authorities and it is clear that, under the circumstances, the accused's conduct was to the prejudice of good order and discipline in the Armed Forces or was of a nature to bring discredit upon the Armed Forces.

Appellant now claims that his pleas were improvident because the short time during which he had the stolen items in his hands —namely, when he "helped them carry them inside" the pawn shops—was too brief to support a finding that he had received stolen property. In his view, "a person charged with receiving stolen property must have control for an appreciable moment of time."

## II

According to the Manual for Courts-Martial under which appellant was tried, a conviction for receiving stolen property requires proof:[1]

> (a) That the accused received, bought, or concealed certain property of a value alleged; (b) that the property belonged to another person named or described; (c) that the property had been stolen; (d) that the accused then knew that the property had been stolen; and (e) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

1. *See* para. 213*f* (14), Manual for Courts-Martial, United States, 1969 (Revised edition); *see also* para. 106*b*, Part IV, Manual For Courts-Martial, United States, 1984.

■ Property has not been "received" unless "possession" has been taken of that property.[2] Moreover, the possession must have been taken *after* the original asportation has occurred, for otherwise the person taking possession will be a thief, rather than a receiver. *Cf. United States v. Cartwright*, 13 M.J. 174 (C.M.A.1982).

■ In a contested case, we might doubt whether appellant's actions in carrying the office machines into the pawn shop would constitute possession for purposes of a prosecution for receiving stolen property.[3] However, in view of appellant's own interpretation of the situation—as reflected in the stipulation of fact and in his answers during the providence inquiry—we conclude that the judge was justified in accepting the guilty pleas.

■ Furthermore, according to appellant's version of the events, he probably was an accessory after the fact to the crime of larceny.[4] *See* Article 78, UCMJ, 10 U.S.C. § 878. He assisted persons whom he knew to be thieves in their efforts to dispose of their loot; and such assistance tended to hinder or prevent their "apprehension, trial, or punishment." *Cf.* para. 157, Manual for Courts-Martial, United States, 1969 (Revised edition). The maximum penalty for an accessory after the fact to larceny is very similar to that for a receiver of stolen property.[5] Therefore, Graves has little cause for complaint, even though his accuser might better have charged him as an accessory after the fact—or might even have preferred separate charges against him as a receiver and as an accessory in order to prepare for possible exigencies of proof.[6]

We hold that the granted issue is without merit.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

Judge FLETCHER did not participate.

**2.** The possession may be actual or constructive. *Cf. United States v. Dugan*, 477 F.2d 140 (8th Cir.1973); *People v. Piszczek*, 404 Ill. 465, 89 N.E.2d 387 (1949); *People v. Dennis*, 88 App. Div.2d 963, 451 N.Y.S.2d 452 (1982).

**3.** A porter or bell boy who carries stolen property from one place to another at the direction of the thief probably does not qualify as a receiver. Historically, the offense of receiving was proscribed in order to deal with persons who fenced stolen property—*e.g.*, Fagin in C. Dickens, *Oliver Twist.*

**4.** As explained in 4 *Wharton's Criminal Law* 2–3 (C. Torcia 14th ed. 1981):

At common law, a person who received stolen property knowing that it was stolen was deemed guilty of (1) "misprision of felony", on the theory that, knowing of the commission of a larceny, he refrained from reporting it to the authorities, or (2) "compounding a felony", on the theory that, knowing of the commission of a larceny, he agreed, in consideration of a pecuniary benefit, to refrain from reporting it to the authorities. As a result of an early English statute, the receiver of stolen property came to be regarded as a party to the underlying larceny as an accessory after the fact. However, over the years, with the development of English as well as American statutes, the "receiver of stolen property" has come to be recognized as the author of a separate and independent offense ....

*Id.*, § 453 (footnotes omitted).

In the early law, a receiver of stolen property was regarded as a party to the underlying larceny as an accessory after the fact. Although, under existing law, a "receiver" is deemed the author of a separate and independent offense, the nature of the offense, at least conceptually, is still accessorial, in that the receiver renders "aid" to the thief by providing a market for the property stolen. Nevertheless, a person may be prosecuted for and convicted of receiving stolen property even though the thief has not been prosecuted, convicted, apprehended, or identified.

*Id.*, § 454 (footnote omitted).

**5.** Since the property here had a value in excess of $100.00, the maximum punishment for an accessory and receiver would be the same except for the confinement—which would be 30 months for the accessory and 36 months for the receiver. *See* Table of Maximum Punishments, para. 127*c*, 1969 Manual, *supra*; para. 106e(2), 1984 Manual, *supra*.

**6.** *United States v. Felty*, 12 M.J. 438 (C.M.A. 1982). However, findings of guilty on both charges could not be allowed to stand, and punishments could not be imposed on both offenses. *Cf. United States v. Cartwright*, 13 M.J. 174 (C.M.A.1982).