UNITED STATES, Appellee,

v.

Wayne E. WRIGHT, Specialist Four
U.S. Army, Appellant.

No. 49802.
CM 444961.

U.S. Court of Military Appeals.

April 7, 1986.

For Appellant: *Captain David L. Carrier* (argued); *Lieutenant Colonel Arthur L. Hunt* and *Major Stephen R. Dooley* (on brief); *Colonel William G. Eckhardt.*

For Appellee: *Captain John F. Burnette* (argued); *Colonel James Kucera,* *Lieutenant Colonel Adrian J. Gravelle,* *Major Thomas J. LeClair* (on brief); *Major Joseph A. Rehyansky.*

*Opinion of the Court*

EVERETT, Chief Judge:

On September 26, 1983 appellant was tried by general court-martial composed of a military judge alone at Fuerth, Germany. He pleaded guilty and was found guilty of forgery and larceny of a check, in violation of Articles 123 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 923 and 921, respectively. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $450.00 pay per month for 1 year, and reduction to E–1. Pursuant to a pre-trial agreement, the convening authority reduced the period of confinement and forfeiture to 10 months but otherwise approved the adjudged sentence. The Court of Military Review affirmed in a short-form opinion.

This Court specified the following issue for review:

WHETHER APPELLANT CAN BE FOUND GUILTY OF LARCENY AS A PRINCIPAL.

Our examination of the record of trial convinces us that this issue is without merit.

A stipulation of fact, admitted in evidence as part of appellant's guilty pleas, states *inter alia* :

On or about the night of 17 September 1982, SSG Cordell D. Allison, C Battery, 3d Battalion, 5th Field Artillery, was in his billets room at Building # 553C, Merrell Barracks, Nuernberg, Federal Republic of Germany. That evening, SSG Allison had placed his mid month paycheck, check No. 24,743,741 drawn upon the United States Treasury in the amount of $547.00 in his wallet which he placed in the interior pocket of his Class A uniform blouse which hung in his room wall locker. The Accused and several other servicemen were present in the room of SSG Allison. Allison left the

room to take a shower. Allison's wall locker was closed at this time but not secured by a lock. While SSG Allison was down the hall taking a shower, PFC Raymond Crowder opened the locker and removed SSG Allison's wallet from the Class A blouse. After leaving SSG Allison's room, PFC Crowder removed the paycheck from the wallet and disposed of the wallet containing Allison's identification cards.

The Accused, PFC Crowder and the other servicemen in SSG Allison's room stayed up all night listening to music. At approximately 0600 hours, PFC Crowder told the Accused to meet him in the little-used latrine on the third floor. The Accused did so. In the latrine, PFC Crowder informed the Accused that he "had SGT Allison's check." By this, the Accused knew that PFC Crowder had stolen SSG Allison's check. PFC Crowder informed the accused that if the Accused signed the check for PFC Crowder, PFC Crowder would forget about the $300.00 which the Accused owed to PFC Crowder. The Accused agreed to this arrangement.

PFC Crowder and the Accused then walked into the Day Room, and closed the door. PFC Crowder pulled out a U.S. Treasury check from inside his fatigue shirt and handed it to the Accused. The Accused looked at the face of the check, saw that it was made out to SSG Allison, turned it over, and forged the name "Cordell D. Allison" as an endorsement on the back of the check. He then handed it back to PFC Crowder, knowing that PFC Crowder intended to take it to a bank and cash it. PFC Crowder cashed the check at the Deutsche Verkenrs-Kredit Bank, Nuernberg, FRG.

These facts gave rise to a question in our mind whether the larceny was complete before appellant became involved. However, on further consideration of the entire record of trial, we are satisfied that it legally supports his guilt as a principal to the alleged larceny of a check offense. Art. 77, UCMJ, 10 U.S.C. § 877. *See United States v. Jackson*, 20 M.J. 68, 69 n. 2 (C.M.A.1985). We first note that defense counsel acknowledged, before entry of pleas, that the prosecution's theory of guilt was based on appellant's conduct as an aider and abettor during the asportation stage of this larceny. *See United States v. Escobar*, 7 M.J. 197 (C.M.A.1979). In addition, trial counsel, prior to acceptance of appellant's pleas, expressly called the military judge's attention to two cases explaining this theory. *See United States v. Seivers*, 8 M.J. 63 (C.M.A.1979), and *United States v. Bryant*, 9 M.J. 918 (A.C.M.R. 1980). Finally, during the providence inquiry, the military judge explicitly questioned appellant concerning his guilt in light of his conduct during the asportation phase of this larceny.* In this context no doubt exists in our mind that appellant's conduct as an aider and abettor occurred prior to completion of the asportation phase

---

* MJ: The actual initial taking was taken by Crowder?
ACC: Yes, sir.
MJ: And you only had it in your possession for a short period of time to indorse the check?
ACC: Yes, sir.
MJ: Now do you understand that until the check, which was, in this case, stolen or taken unlawfully or wrongfully by Crowder, is taken to the place where Crowder intended it to go—that is, why he first took it: he wanted to take it from one place to another—and until it gets to the place where he wants it to go, it's still in a—what we call an asportation phase; in other words, it's still being transported to the place where the thief in this case wants it to end up. Do you understand that?

ACC: Yes, sir.
MJ: And while it is in that phase and you take it and you aid or assist the thief or the one who has wrongfully taken it, you also become liable as one who is taking the check, even though you didn't actually take it from the wall locker in this case. Do you understand that?
ACC: Yes, sir.
MJ: So if this stipulation says "your taking," that's only responding to the small period of time in the actual taking that you actually had possession and control over that check.
ACC: Yes, sir.
MJ: Is that your understanding?
ACC: Yes, sir.

of this larceny. *See generally United States v. Chambers*, 12 M.J. 443, 444 (C.M.A.1982).

Furthermore, in dealing with guilty pleas, we have not hesitated to uphold a conviction when the providence inquiry clearly establishes guilt of an offense different from but closely related to the crime to which the accused has pleaded guilty. *United States v. Graves*, 20 M.J. 344, 346 (C.M.A.1985); *United States v. Felty*, 12 M.J. 438 (C.M.A.1982). If Wright was not the principal, he was an accessory after the fact to the larceny. *See* Art. 78, UCMJ, 10 U.S.C. § 878. For this offense the maximum confinement authorized is only one-half that which may be adjudged for larceny. *See* n. 2, Table of Maximum Punishments, para. 127(c), Manual for Courts-Martial, United States, 1969 (Revised edition). Because the convictions of larceny and of forgery were treated by the judge as multiplicious for sentencing, the ceiling on maximum punishment employed by the judge would have been the same in the event of a conviction for being an accessory. Thus, appellant has little cause for complaint.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.