**UNITED STATES, Appellant,**

v.

**Jerome M. EPPS, Private, U.S. Army, Appellee.**

No. 52,514.
SPCM 20931.

U.S. Court of Military Appeals.

Dec. 18, 1987.

For the United States: *Captain Michael W. Hoadley* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Gary F. Roberson, Captain Samuel J. Rob, Captain Garreth E. Shaw* (on brief).

For the Accused: *Captain Kevin T. Lonergan* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Paul J. Luedtke* (on brief); *Major Joel D. Miller.*

OPINION OF THE COURT

EVERETT, Chief Judge:

Private Epps was tried at Baumholder, Federal Republic of Germany, by a military judge sitting as a special court-martial.

Pursuant to his pleas, he was found guilty of stealing $90.00 from Private Michael Lightner, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921; and the judge sentenced him to a bad-conduct discharge, confinement for 4 months, a fine of $1,500, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority reduced the confinement and the fine but otherwise approved the trial results. Subsequently, the Court of Military Review, over the vigorous dissent of Chief Judge Suter, set aside the findings of guilty and the sentence and authorized a rehearing. 20 M.J. 534 (1985). A motion for reconsideration was denied, whereupon the Judge Advocate General of the Army certified [1] to us this issue:

> WHETHER THE UNITED STATES [ARMY] COURT OF MILITARY REVIEW TOO STRINGENTLY APPLIED THE STANDARD OF REVIEW MANDATED BY UNITED STATES v. CARE, 18 USCMA 535, 40 CMR 247 (CMA 1969) WHEN THE APPELLANT STATED FACTS DURING THE PROVIDENCE INQUIRY WHICH CLEARLY ESTABLISHED HIS GUILT TO THE CHARGED OFFENSE.

I

Early in the providence inquiry, the military judge explained the elements of larceny and asked Epps about a proposed written stipulation of fact. The accused affirmed the accuracy of the stipulation, which stated that late on May 9 or early on May 10, 1984, Epps and Private Henry Usher went into the room of Private Lightner; "Usher reached on top of the victim's wall locker and took a key which the victim kept hidden there"; he and "Usher unlocked the victim's wall locker, reached into a pair of the victim's pants, and removed the victim's wallet"; then he and "Usher wrongfully took $90.00 from the wallet," and "each kept $45.00"; and this taking was to deprive Lightner "permanently ... of the use and benefit of" his money.

However, Epps' sworn testimony during the providence inquiry varied somewhat from the scenario presented in the stipulation. According to the accused, he had drunk "two sixpacks of beer ... and about four shots of liquor" during approximately four hours on the evening of May 9. Thereafter, upon returning to his barracks, Epps learned that Private "Usher was looking for" him. However, Epps first went to his own room, which he shared with Private Lightner and others. Lightner was sleeping there at the time, but Epps did not know that. He proceeded to Usher's room and then returned with Usher to his own room. By that time, Usher had told Epps about having taken some money from Private Lightner earlier that day.

Epps testified that Usher

> asked me to help him take some more money from Lightner that night. I told him no. He proceeded to go on top of Lightner's wall locker. I didn't do anything to stop him. Then he got the key. He offered me the key to open his wall locker and I refused it. Then he unlocked his wall locker, Lightner's wall locker, and opened it up and he was searching for his wallet.

Epps was "just standing there watching." Usher "found his wallet and he opened it up and he took out a $50.00 bill and two 20s. He told me that we would split the money in half. So, he gave me the two 20s and kept the 50." Lightner had been sleeping all this time; and, until the money was split, Epps "was just standing there." [2] Epps denied that he had been aware of

---

1. We denied a motion to dismiss the certificate as untimely because the time in which a certificate must be filed does not begin to run until a petition for reconsideration is decided by the Court of Military Review, assuming one is filed within the prescribed period. *See* Rule 19, Rules of Practice and Procedure, Courts of Military Review (1985); Rule 20 (1981).

2. The military judge noted that, according to the stipulation of fact, Epps received $45.00; but, according to Epps' testimony, he received only $40.00. Epps explained that the next day Usher changed the $50.00 bill and then gave him $5.00 more.

Usher's larcenous intent when they went from Usher's room back to Epps' room, but Epps found that out before Usher got the key. Epps affirmed that, although he was intoxicated, he still was able to entertain the idea of keeping the money, and he had known that it was wrong for him to accept the money.

The military judge did not explain the concept of aiding and abetting; but he asked Epps whether his conduct had "aided" or encouraged Usher "in any way." Epps' reply was that he had aided Usher "because I didn't do nothing to stop him. And I didn't refuse the money." Moreover, Epps had told Usher that he "just didn't care if" Usher opened Lightner's wall locker and took his money. Epps believed that Usher would not have stolen the money if he had objected.

The judge asked about "the theory [of counsel] as to the asportation"; and both trial and defense counsel took the position that the larceny was not complete until the money had "reach[ed] a relatively secure area." According to defense counsel, "[J]ust moving the money a fraction of an inch from the billfold would not have been sufficient." As the military judge and counsel then agreed, "[T]he crime was still an ongoing venture at the time the money was split." After further inquiry and review of a pretrial agreement, the judge accepted the guilty pleas.

## II

The majority of the Court of Military Review took the position that the pleas of guilty were improvident because of the cumulative effect of errors by the military judge in (a) "failing to explain ... the law of principals to" Epps; (b) "failing to resolve inconsistencies between the facts stated in the stipulation and those" recited by Epps "during the providence inquiry"; and (c) "accepting his pleas of guilty" despite Epps' "failure to admit" facts requisite to establish his guilt as an aider and abettor. Contrariwise, the dissenting judge quoted extensively from the record to support his view that, although "appellant did make some isolated statements that, standing alone, could be construed as inconsistent with his guilty plea," his testimony taken as a whole was sufficient to justify acceptance of his guilty pleas. 20 M.J. at 537.

■ Like the court below, we are concerned about the discrepancies between the stipulation of fact and Epps' answers during the providence inquiry. Constitutional requirements are not violated by acceptance of a guilty plea of a defendant who does not admit actual crime or even maintains his innocence, if he intelligently decides that such a plea is in his interest and if the record strongly evidences guilt. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Article 45 of the Uniform Code, 10 U.S.C. § 845, imposes a more demanding standard, whereunder a plea of guilty must be rejected if the accused presents evidence inconsistent with the plea. In promulgating the Manual for Courts-Martial, United States, 1984, the President went even further to assure the accuracy of pleas of guilty by requiring that an accused's testimony during the providence inquiry be given "under oath." R.C.M. 910(e).

■ Therefore, when, as in this case, a stipulation of fact clearly demonstrates guilt but the accused's testimony is inconsistent therewith, the military judge has a duty to note the inconsistency and seek explicit clarification from the accused. As the court below recognized, the judge did not fully perform this duty.

■ We also agree with the Court of Military Review that Epps' failure to stop the larceny did not constitute aiding and abetting. *Cf. United States v. Knudson*, 14 M.J. 13, 15 (C.M.A.1982); *United States v. Sanders*, 14 U.S.C.M.A. 524, 34 C.M.R. 304 (1964). If, when Usher accompanied Epps to his room, Epps had anticipated that his guest planned to steal the property of his roommate, Private Lightner, but nonetheless he had allowed Usher to enter, the situation might be different. However, Epps denied having this foreknowledge; and, in its absence, we doubt that he would have any legal obligation to stop the larceny. Moreover, although failure to explain to an accused that an aider and abetter

must intend to assist the criminal venture is not always fatal to the providence of a guilty plea,[3] we do not believe that, absent such an explanation, the accused's criminal liability for stealing the money should be sustained on a theory that he aided Usher by not stopping the larceny. Even Epps' comment that he "didn't care" if Usher took the money might not constitute encouragement sufficient to satisfy the requirements of Article 77 of the Code, 10 U.S.C. § 877; and again we would be reluctant to conclude that the guilty pleas were provident when the judge had provided Epps no explanation of the law of principals.

If, as the military judge and counsel believed, asportation of the $90.00 had not been completed when Usher divided the money with Epps, a sounder basis exists for concluding that Epps aided commission of the larceny. Acceptance of the two $20.00 bills before asportation was complete could be considered encouragement of the theft of the entire $90.00. However, if we rely on a theory of aiding and abetting, we once again cannot ignore the judge's failure to explain to Epps the applicable law.

■ On the other hand, without relying on any theory of vicarious liability, we can uphold a finding of guilty of larceny of the two $20.00 bills, if asportation had not been completed before Epps received them from Usher. As to this $40.00, Epps would be liable as a perpetrator because he took the money himself. *See* Part IV, para. 1*b* (2)(a), Manual, *supra.*

Whether asportation had been completed was also an issue in *United States v. Wright,* 22 M.J. 25 (C.M.A.1986). There, in holding that asportation was still underway when the accused became involved, we noted that defense counsel had taken this position at trial. Similarly, in upholding the providence of the pleas of guilty in *United States v. Graves,* 20 M.J. 344, 346 (C.M.A. 1985), we gave weight to "appellant's own interpretation of the situation."

■ In the case at bar, the military judge and both counsel stated for the record that, in their view, asportation had not been completed when Usher delivered the $40.00 to Epps. We believe that here—as in *Wright* and in *Graves*—significance should be attached to the views expressed at the time of trial by the various participants. Accordingly, since the military judge and both counsel were of the clear opinion that asportation was not complete when the spoils were divided, we conclude that by his own judicial admissions, Epps was guilty as a perpetrator of stealing the two $20.00 bills which Usher handed to him.

There is an additional basis for upholding the pleas and the findings of guilty as to the $40.00 which Epps received from Usher at the time of the theft. In *United States v. Felty,* 12 M.J. 438 (C.M.A.1982), we ruled that, when an accused pleaded guilty to escape from custody, in violation of Article 95 of the Uniform Code, 10 U.S.C. § 895, but his answers during the providence inquiry showed that he was guilty of escape from confinement, in violation of the same Article, "the technical variance between the offense alleged and that which is established from an accused's own lips does not require setting aside the plea of guilty." *Id.* at 442. In *United States v. Mazur,* 13 M.J. 143, 145 (C.M.A.1982) (Everett, C.J., concurring), it was suggested that the same principle would apply where the accused had pleaded guilty to unlawful killing by culpable negligence, in violation of Article 119(b)(1), UCMJ, 10 U.S.C. § 919(b)(1), and his answers during the providence inquiry established that he was guilty of involuntary manslaughter, under Article 119(b)(2).

In *United States v. Graves, supra,* we observed that, according to the accused's own account of events during his providence inquiry, he probably had been an accessory after the fact to the crime of larceny; and we suggested that he "has little cause for complaint, even though his accuser might better have charged him as an accessory after the fact—or might even have preferred separate charges against him as a receiver and as an accessory in

---

**3.** *See, e.g., United States v. Crouch,* 11 M.J. 128     (C.M.A.1981).

order to prepare for possible exigencies of proof." 20 M.J. at 346 (footnote omitted).

In *United States v. Wright, supra,* we explained:

Furthermore, in dealing with guilty pleas, we have not hesitated to uphold a conviction when the providence inquiry clearly establishes guilt of an offense different from but closely related to the crime to which the accused has pleaded guilty. [Citing *Graves* and *Felty.*] If Wright was not the principal, he was an accessory after the fact to the larceny. *See* Art. 78, UCMJ, 10 U.S.C. § 878. For this offense, the maximum confinement authorized is only one-half that which may be adjudged for larceny. See n. 2, Table of Maximum Punishments, para. 127(c), Manual for Courts-Martial, United States, 1969 (Revised edition). Because the convictions of larceny and of forgery were treated by the judge as multiplicious for sentencing, the ceiling on maximum punishment employed by the judge would have been the same in the event of a conviction for being an accessory. Thus, appellant has little cause for complaint.

22 M.J. at 27.

The same rationale applies here. Although larceny and receiving stolen property are punishable under different Articles of the Code—Article 121; and Article 134, UCMJ, 10 U.S.C. § 934, respectively—they are closely related. Indeed, frequently they are charged alternatively in order to provide for exigencies of proof. For larceny of property worth $100.00 or less, as well as for receiving stolen property of a value of $100.00 or less, the 1984 Manual authorizes a maximum punishment of a bad-conduct discharge, 6 months' confinement, and forfeitures. *See* Part IV, paras. 46e (1)(a) and 106e (1).

■ While Article 45 seeks accuracy in pleas of guilty, *Felty* and its progeny es-

tablish that, if an accused pleads guilty and then at the providence inquiry, he gives sworn testimony which clearly establishes his guilt of a different but closely-related offense having the same maximum punishment, we may treat that accused's pleas of guilty as provident. Here, even if the asportation of the $90.00 had already been completed before the money was divided, Epps' answers establish that he was guilty of receiving stolen property in the amount of $40.00.[4] Accordingly, on the basis of Epps' own testimony, his pleas of guilty and the findings of guilty based thereon may be upheld to the extent they are based on larceny of the two $20.00 bills. The certified question is answered in the affirmative.

### III

The specification of the Charge is amended by changing $90 to $40. The decision of the United States Army Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for further review in light of this opinion.

Judge SULLIVAN did not participate.

COX, Judge (concurring):

*See* my concurring opinion in *United States v. Penister,* 25 M.J. 148, 153 (C.M.A. 1987), where I state:

I do not construe Article 45, Uniform Code of Military Justice, 10 U.S.C. § 845, so strictly as to require an accused to admit unequivocally each and every element of an offense.

\* \* \* \* \* \*

A good trial judge can usually sort out the guilty plea and determine if an accused is so pleading because he has committed the offense charged. A good military judge will also *make such a finding on the record,* which is the true purpose of Article 45.

---

4. To find the accused guilty under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, requires that the Government establish that his conduct was service-discrediting or prejudicial to good order and discipline. In light of the way in which the guilty pleas were handled, the military judge had no occasion to inquire specifically of Epps about this element. However, the facts specifically admitted by appellant were more than enough to establish conduct that was both service-discrediting and prejudicial to good order and discipline. Under these circumstances, we believe the guilty pleas to larceny were provident.