UNITED STATES, Appellee

v.

Makisha I. MORTON, Private First Class
U.S. Army, Appellant

No. 09-0185

Crim. App. No. 20060458

United States Court of Appeals for the Armed Forces

Argued November 17, 2009

Decided May 5, 2010

BAKER, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN, STUCKY, and RYAN, JJ., joined.

<u>Counsel</u>

For Appellant:  Captain Pamela Perillo (argued); Lieutenant Colonel Jonathan F. Potter, Lieutenant Colonel Mark Tellitocci, and Major Grace M. Gallagher (on brief).

For Appellee:  Captain Nicole L. Fish (argued); Colonel Denise R. Lind, Lieutenant Colonel Francis C. Kiley, and Major Christopher B. Burgess (on brief); Colonel Norman F. J. Allen III and Major Adam S. Kazin.

Military Judge:  Debra L. Boudreau

<u>**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION**</u>.

Judge BAKER delivered the opinion of the Court.

Appellant was tried before a military judge sitting as a general court-martial. In accordance with her pleas, she was convicted of making a false official statement, larceny, and forgery (two specifications) in violation of Articles 107, 121, and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921, 923 (2000) respectively. She was also convicted, contrary to her plea, of obstructing justice, in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2000). The adjudged sentence included a bad-conduct discharge, confinement for twenty-four months, forfeiture of $750 pay per month for twenty-four months and reduction to pay grade E-1. Pursuant to a pretrial agreement, the convening authority approved confinement for eight months and forfeiture of $750 per month for eight months, but otherwise approved the remainder of the sentence as adjudged. The United States Army Court of Criminal Appeals (CCA) affirmed. United States v. Morton, No. 20060458, 2008 CCA LEXIS 615, at *10-*11 (A. Ct. Crim. App. Sept. 30, 2008). However, the court found that the plea inquiry could not support the two forgery specifications and instead affirmed two violations of making false official statements, under Article 107, UCMJ. Id.

The granted issue tests the continuing vitality, of the so-called "closely related offense" doctrine.[1]  In light of the abiding principle of fair notice to an accused, we hold that this doctrine, as currently relied upon by appellate courts in upholding guilty pleas in the military justice system, is no longer viable.

## BACKGROUND

The issue in the case revolves around Appellant's guilty plea to the two forgery specifications.[2]  Appellant's statements

---

[1] On Appellant's petition, we granted review of the following issue:

> WHETHER, AFTER FINDING THE EVIDENCE FACTUALLY
> INSUFFICIENT TO SUPPORT A FINDING OF GUILTY TO THE
> ADDITIONAL CHARGE AND ITS SPECIFICATION (FORGERY), THE
> ARMY COURT ERRED IN FINDING APPELLANT GUILTY OF A
> LESSER INCLUDED OFFENSE ON A THEORY NOT PRESENTED TO
> THE TRIER OF FACT.

We note that the lower court in this case actually affirmed the findings of guilty based on the closely related offense doctrine rather than the lesser included offense doctrine. Thus, notwithstanding Appellant's framing of the issue, we will address the closely related offense doctrine.

[2] The specifications at issue comprised the Additional Charge and were set forth as follows:

> SPECIFICATION 1:  In that Private First Class Makisha I.
> Morton, U.S. Army, did . . . on or about 4 January 2006,
> with intent to defraud, falsely alter a certain DD Form 689
> ("Individual Sick Slip") dated 1-4-06 in the following
> words and figures, to wit:  altering the time authorized
> for quarters in the "Remarks" section of the form from an
> uncertain number to "7," which said DD Form 689 . . .
> would, if genuine, apparently operate to the legal harm of
> another.

during the plea inquiry and a stipulation of fact established that on January 4, 2006, Appellant reported to sick call for medical care due to her pregnancy.[3] Her superiors had instructed her to return to the unit with whatever instructions the doctor provided. A nurse issued Appellant a DD Form 689 (Individual Sick Slip) indicating that she should be placed "on quarters for 72 hours."[4] However, before turning the slip in to her unit, Appellant altered the slip by changing the "72" to "7" and then falsely represented that she had been assigned "7 days of quarters." Appellant admitted to the military judge that she altered the slip with the intent to defraud her unit into giving her an additional four days on quarters, which she received. Morton, 2008 CCA LEXIS 615, at *8.

Seven days later on January 11, 2006, Appellant's squad leader ordered her to report to sick call to determine whether she was fit to return to duty. She was again directed to bring

---

SPECIFICATION 2: In that Private First Class Makisha I. Morton, U.S. Army, did . . . on or about 11 January 2006, with intent to defraud, falsely alter a certain DD Form 689 ("Individual Sick Slip") dated 1-11-06 in the following words and figures, to wit: altering the date from "1-4-06" to "1-11-06," which said DD Form 689 . . . would, if genuine, apparently operate to the legal harm of another.

[3] The brief factual recitation used here is taken in relevant part from the lower court's opinion.

[4] Appellant's chain of command relied on the sick slip to excuse her from official duties that she otherwise would have had to perform.

4

what documentation she was given back to her squad leader.  The

same nurse Appellant saw previously gave her a sick slip

indicating that she should be placed on quarters for the next

twenty-four hours.  Appellant returned to her quarters, made a

copy of the slip she was given on January 4 and changed the date

to January 11, 2006.  She submitted this altered slip to her

unit, ostensibly authorizing an additional seven days on

quarters as opposed to the actual authorized twenty-four hours.

Id.

The CCA concluded that the factual basis described above

could not support a conviction for the two forgery

specifications under Article 123, UCMJ.  Id. at *2-*3.

Nonetheless, citing United States v. Epps, 25 M.J. 319, 323

(C.M.A. 1987), and United States v. Hubbard, 28 M.J. 203, 205-06

(C.M.A. 1989), the lower court affirmed two violations of making

false official statements under Article 107, UCMJ, under the

closely related offense doctrine.  2008 CCA LEXIS 615, at *3-

*11.  The court stated, "We are satisfied that the two

specifications alleging violations of Article 123, UCMJ, put the

appellant on notice that she could be convicted under Article

107, UCMJ, because the elements of both are substantially the

same, with only minor technical variance."[5]  Id. at *5 (footnotes

omitted).[6]

I

The underlying question presented in this case is whether

or not Appellant's plea is provident in light of the fact that

the CCA affirmed Appellant's conviction based on the closely

related offense doctrine.  Heretofore, the closely related

offense doctrine, as applied to guilty pleas, has allowed an

---

[5] The elements of Article 107, UCMJ, are:

(1)  That the accused signed a certain official document or made a certain official statement;
(2)  That the document or statement was false in certain particulars;
(3)  That the accused knew it to be false at the time of signing it or making it; and
(4)  That the false document or statement was made with the intent to deceive.

Manual for Courts-Martial, United States pt. IV, para. 31(b) (2005 ed.) (MCM).  The elements of Article 123, UCMJ -- Forgery, making or altering -- are:

(a)  That the accused falsely made or altered a certain signature or writing;
(b)  That the signature or writing was of a nature which would, if genuine, apparently impose a legal liability on another or change another's legal rights or liabilities to that person's prejudice; and
(c)  That the false making or altering was with the intent to defraud.

MCM, pt. IV, para. 48(b).

[6] The court purported to amend the two forgery specifications charged under Article 123, UCMJ, to allege violations of Article 107, UCMJ, and then affirmed the amended specifications.  2008 CCA LEXIS 615, at *10-*11.

6

appellate court to "uphold a conviction when the providence inquiry clearly establishes guilt of an offense different from but closely related to the crime to which the accused has pleaded guilty." United States v. Wright, 22 M.J. 25, 27 (C.M.A. 1986) (citing United States v. Graves, 20 M.J. 344, 346 (C.M.A. 1985); United States v. Felty, 12 M.J. 438 (C.M.A. 1982)). Felty, the apparent genesis of the doctrine, involved a plea of guilty to escape from custody. 12 M.J. at 439. Felty, a Marine, was in pretrial confinement at the time of the offense. Id. He was escorted by another Marine to his magistrate's hearing for review of the decision ordering him into pretrial confinement. Id. The military magistrate determined that Felty should remain in confinement and ordered him returned to the brig. Id. When the escort asked Felty whether he had been ordered returned to the unit or back to the brig, Felty falsely replied that he had been ordered returned to the unit. Id. En route to the unit area, the two stopped at the dining facility for lunch. Id. While the two were at the dining facility, Felty departed without proper authority and entered a period of unauthorized absence. Id. at 440.

The Court of Military Appeals concluded that Felty's statements during the plea inquiry established that he had escaped from confinement rather than custody. Id. at 442. Although both offenses are proscribed under Article 95, UCMJ, 10

7

U.S.C. § 895, the Court concluded that escape from confinement and escape from custody are different offenses because they require proof of distinct elements. Id. at 440. Nonetheless, because the offenses were proscribed by the same article, and carried the same maximum punishments, in the view of the Court, this amounted to a "technical variance" without resulting in material prejudice to the accused under Article 59, UCMJ, 10 U.S.C. § 859. Id. at 442. The Court upheld the conviction for escape from custody since the accused's admissions indicated he was guilty of escape from confinement notwithstanding the fact that the accused was apparently not guilty of the charged offense and had neither pleaded to nor had he been charged with escape from confinement. Id.

                              II

      This closely related reasoning in Felty was applied in subsequent appellate contexts. In Graves, for example, the accused pleaded guilty to receipt of stolen property under Article 134, UCMJ. 20 M.J. at 344. After some discussion as to whether the accused had in fact "received" the stolen property, the Court upheld the plea based on the accused's interpretation of the situation. Id. at 346. Suggesting an alternative theory for upholding the plea, however, the Court stated that the accused "probably was an accessory after the fact to the crime of larceny" under Article 78, UCMJ, 10 U.S.C. § 878, a

completely different statutory offense. Id. The Court concluded that "Graves has little cause for complaint, even though his accuser might better have charged him as an accessory after the fact -- or might even have preferred separate charges against him as a receiver and as an accessory in order to prepare for possible exigencies of proof." Id.

The Court applied a similar analysis in Epps. There the accused pleaded guilty to larceny. 25 M.J. at 319. On appeal, this Court found "an additional basis for upholding the pleas" by concluding that the accused's statements during the plea inquiry indicated that he was guilty of the closely related offense of receipt of stolen property, again a completely different statutory offense. Id. at 323. The Court then stated the essence of the closely related offense doctrine: "Felty and its progeny establish that, if an accused pleads guilty and then at the providence inquiry, he gives sworn testimony which clearly establishes his guilt of a different but closely-related offense having the same maximum punishment, we may treat that accused's pleas of guilty as provident." Id. In Hubbard, this Court appeared to move the doctrine yet a step further. This Court characterized its holding in Wright, 22 M.J. at 27, as having "affirmed findings of guilty for 'closely-related' crimes when the authorized sentence was substantially similar to that

9

which an accused could receive had he been found guilty of the proper crime." 28 M.J. at 206 (emphasis added).

Notably, the Court's analysis in this line of cases is based on neither the text of the UCMJ, nor the MCM. It is also inconsistent with more recent cases stressing the importance of fair notice in the context of guilty pleas and an accused's right to understand to what he is pleading guilty and on what basis. See, e.g., United States v. Medina, 66 M.J. 21, 26 (C.A.A.F. 2008); United States v. Lubasky, 68 M.J. 260, 265 (C.A.A.F. 2010). Furthermore, the doctrine does not appear to be supported by particularized consideration of any congressional or presidential authority under Article I or Article II of the Constitution regarding regulation of the armed forces.

## III

The problem with the "closely related offense" doctrine is that it suggests that appellate courts can affirm a plea of guilty on the basis that the accused's admissions during the plea colloquy establish his guilt to a different uncharged, albeit closely related, offense. "[A]n accused has a right to know to what offense and under what legal theory he or she is pleading guilty. This fair notice resides at the heart of the plea inquiry." Medina, 66 M.J. at 26. Allowing an appellate court to affirm guilt based on an offense with which the accused

has not been charged, which is not a lesser included offense of the charged offense, or to which he has not entered a plea of guilty is inconsistent with the principle iterated in Medina and other recent decisions of this Court concerning the issue of fair notice.  See, e.g., United States v. Miller, 67 M.J. 385, 389 (C.A.A.F. 2009) (overruling on notice and due process grounds United States v. Foster, 40 M.J. 140 (C.M.A. 1994), which held that clauses 1 and 2 of Article 134, UCMJ, were per se included in every enumerated offense).  That said, an accused may choose, with convening authority approval, to plead guilty to any amended specification as long as the plea inquiry establishes that such a plea is knowing and voluntary and the plea is accepted by the military judge.[7]

It is the Government's responsibility to determine what offense to bring against an accused.  Aware of the evidence in its possession, the Government is presumably cognizant of which offenses are supported by the evidence and which are not.  In some instances there may be a genuine question as to whether one offense as opposed to another is sustainable.  In such a case, the prosecution may properly charge both offenses for exigencies of proof, a long accepted practice in military law.  United

---

[7] We have held that the convening authority's entry into a pretrial agreement that calls for pleas of guilty to offenses different from those charged is the "functional equivalent" to an order referring those offenses to the court-martial.  United States v. Wilkins, 29 M.J. 421, 424 (C.M.A. 1990).

11

States v. Villareal, 52 M.J. 27, 31 (C.A.A.F. 1999); United States v. Medley, 33 M.J. 75, 76 (C.M.A. 1991); United States v. Heyward, 22 M.J. 35, 37 (C.M.A. 1986).  In cases where offenses are pleaded for exigencies of proof, depending on what the plea inquiry reveals or of which offense the accused is ultimately found guilty, the military judge may properly accept the plea and dismiss the remaining offense.

## CONCLUSION

Affirming a guilty plea based on admissions to an offense to which an accused has not in fact pleaded guilty and which is not a lesser included offense of the charged offense is inconsistent with traditional due process notions of fair notice.

The decision of the United States Army Court of Criminal Appeals is reversed as to specifications 1 and 2 of the Additional Charge and those specifications and the charge are dismissed.  The decision as to the remaining findings is affirmed.  The record of trial is returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence.